CHARLES A. PITMAN, Appellant, v. JOHN W. DRABELLE et al.

In Banc, February 21, 1916.

1. **CONSTITUTIONAL LAW: City Charter.** A municipal charter or a statute of the State will not be held to violate the Constitution if any other rational interpretation can be given it.

Pitman v. Drabelle.

2. ———: ———: **Legislative Power of People.** Except as inhibited by the Federal or State Constitution the power of the people of a State to legislative is plenary, and they may exercise that power through the Legislature, or the Initiative, and the same principle applies to municipal corporations, which in their public capacity are but agents of the State.

3. ———: ———: **Legislation By Initiative: One House Legislature.** The clause of the new charter of St. Louis which provides that, upon the failure of the one house of the municipal legislature to act upon the certification to it of petitions showing the measure which the people request them to adopt, the measure may be enacted into law through the instrumentality of an initiative petition and the vote of the people, does not contravene that clause of the Constitution which declares that the charter of such a city "shall be in harmony with and subject to the Constitution and laws of the State, and shall provide, among other things, for a chief executive and at least one house of legislation to be elected by general ticket." Nor in conditioning initiative legislation upon the inaction of the one house is it so out of harmony with the constitutional amendment of 1908 applicable to the whole State, or with the statutes of 1913 which gave initiative powers to cities of the second and third class, as to render it invalid. Nor does the Constitution require a municipal legislature of more than one house.

4. ———: ———: **Arrest of Legislation: Election: Injunction.** An election called in pursuance to a provision of the city charter under a valid plan for initiative legislation and proper petitions, cannot be enjoined on the ground that the ordinances as proposed are unconstitutional. During the process of legislation in any mode the work of the lawmakers is not subject to judicial arrest, or control, or even open to judicial inquiry. It is only after the proposed legislation has become an accomplished fact that its constitutionality can be determined by the courts.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Henry S. Caulfield, Homer G. Phillips* and *George L. Vaughn* for appellant.

(1) There can be no doubt as to the right of a taxpayer, suing on behalf of himself and all other cit-

izens and taxpayers who are similarly interested with
him, to have relief by injunction for the prevention of
an illegal or unauthorized diversion of public funds
belonging to the municipality.   2 High on Injunction
(4 Ed.), 1237;   Dillon, Municipal Corporations, sec.
1579 et seq.;   Newmeyer v. Railroad, 52 Mo. 81;   Ru-
bey v. Shain, 54 Mo. 207;   Black v. Cornell, 30 Mo.
App. 641;   Black v. Ross, 37 Mo. App. 250;   Knapp v.
Kansas City, 48 Mo. App. 485;   Mayor of Baltimore
v. Gill, 31 Md. 375;   Savidge v. Spring Lake, 112 Mich.
91.   And this right exists where the illegal or unau-
thorized diversion is for an election of the kind here
involved, for which there is no warrant in law.   22
Cyc. 885;   2 High on Injunction (4 Ed.), 1237;   Mayor
of Macon v. Hughes, 110 Ga. 795;   Layton v. Mayor, 50
La. Ann. 121;   Railroad v. Board of Commissioners,
108 N. C. 56;   Solomon v. Fleming, 34 Neb. 40;   Con-
nor v. Gray, 88 Miss. 489.   (2) The city of St. Louis
has no power or authority, under the Constitution, to
provide by charter for any method or system of legis-
lation independent of at least one house of legislation to
be elected by general ticket.   State ex inf. v. Rail-
road, 151 Mo. 162;   St. Louis v. Telephone Co., 96 Mo.
628;   St. Louis v. Eddy, 123 Mo. 557;   Independence
v. Cleveland, 167 Mo. 388;   St. Louis v. Dreisoerner,
243 Mo. 223;   St. Louis v. Quarry Co., 244 Mo. 479;
State ex rel. v. Skeggs, 154 Ala. 249;   In re Dunn, 9
Mo. App. 255;   State ex inf. v. Kansas City, 233 Mo.
162;   St. Louis v. Dorr, 145 Mo. 466;   Westport v.
Kansas City, 103 Mo. 141;   Cooley, Const. Limita-
tions (7 Ed.), p. 98;   Dield v. People, 3 Ill. 79;   Gra-
ham v. Roberts, 200 Mass. 152;   Mo. Constitution,
art. 9, sec. 22, art. 4, sec. 57.

*Benjamin H. Charles, Charles H. Daues* and *Ev-
erett Paul Griffin* for respondents.

(1)   The court had no jurisdiction of the subject-
matter covered by the petition, and no jurisdiction to

grant the relief prayed for. (a) Because equity has no jurisdiction to restrain, by injunction or otherwise, the exercise of the political rights of the people. State ex rel. v. Aloe, 152 Mo. 466; Fletcher v. Tuttle, 151 Ill. 51; Green v. Mills, 30 L. R. A. 90, 69 Fed. 852; Morgan v. Wetzel, 53 W. Va. 372; Anthony v. Burrow, 129 Fed. 783; Giles v. Harris, 189 U. S. 475; Fisler v. Brayton, 145 Ind. 71; McAlester v. Milwee, 31 Okla. 620; Walton v. Develing, 61 Ill. 201. (b) Because an equity court has no jurisdiction to restrain, by injunction or otherwise, the exercise of the law-making power, nor the process of legislation. Albright v. Fisher, 164 Mo. 64; State ex rel. v. Gates, 190 Mo. 556; Kansas City v. Hyde, 196 Mo. 506; Duggan v. Emporia, 84 Kan. 429; Pfeifer v. Graves, 104 N. E. 529. (c) Because an equity court has no jurisdiction to restrain or arrest, by injunction or otherwise, the official acts of public officials preparatory to, or in the conduct of, public elections. Shoemaker v. Des Moines, 129 Iowa, 244, 3 L. R. A. (N. S.) 382; Duggan v. Emporia, 84 Kan. 429; People ex rel. v. Galesburg, 48 Ill. 485; Weber v. Timlin, 37 Minn. 274; Friendly v. Orcott, 61 Ore. 580. (d) Equity has no jurisdiction, because the complainant has a complete and adequate remedy at law to test the validity of the proposed ordinances, in case they should be adopted. (e) An allegation that the complainant is a taxpayer is not an allegation that his property rights are about to suffer injury. It is merely colorable; thrown in to make a show of right to proceed in equity to an attack on a charter provision. State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Thorson, 9 S. D. 149; Libby v. Olcott, 66 Ore. 134. (2) The initiative and referendum provisions of the St. Louis charter are valid. Wagner's St. Louis Charter, arts. 5 and 6, pp. 40, 41. (a) Because the Constitution contains no grants of power to the city of St. Louis. It merely provides a method

of incorporation; and indicates a part of the form of its government, namely, a chief executive, and at least one house of legislation. Missouri Constitution, art. 9, secs. 20, 22, 23. "No limitation is placed upon the character of the charter, save and except that it shall always be in harmony with and subject to the Constitution and laws of the State." Kansas City v. Oil Co., 140 Mo. 470; St. Louis v. Gleason, 15 Mo. App. 30, affirmed (on this point), 93 Mo. 38; State ex rel. v. Stobie, 194 Mo. 14, 54; St. Louis v. Tel. Co., 149 U. S. 465. Powers conferred by this charter are of equal dignity with powers conferred upon a municipal corporation by an act of the Legislature. Ex parte Smith, 231 Mo. 122; Kansas City v. Bacon, 147 Mo. 272; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; St. Louis v. Gleason, 15 Mo. App. 30. (b) The purpose disclosed in the Constitution was that a charter thus adopted might embrace the entire subject of municipal government, and be a complete and consistent whole, with such provisions as to the powers conferred and the methods of exercise of such powers, as the people of the city might adopt. State ex rel. v. Field, 99 Mo. 352; Kansas City v. Bacon, 147 Mo. 272; Haag v. Ward, 186 Mo. 343. (c) If the initiative and referendum provisions of the St. Louis charter are void, then the same provisions in charters of cities of the second and third classes are void; because the St. Louis charter stands on the same basis as any other legislative act of the State. (d) The provisions are not repugnant to any provision of the Constitution. The Constitution contains no prohibition against the adoption by the city of St. Louis of these methods of legislation. (e) The provisions are in harmony with the Constitution and laws of the State. To be in harmony with the Constitution means merely in "substantial harmony" with the principles of the Constitution. Kansas City v. Bacon, 147 Mo. 259; St. Louis v. De Lassus, 205 Mo. 585.

Legislation by the initiative and referendum are now (since 1908) principles of the Constitution. And these principles have been recognized by the Legislature in its grant of charters to cities of the second and third classes. Laws 1913, pp. 443, 530. (f) The new charter of St. Louis shows on its face that the purpose of the Board of Freeholders which framed it, was to confer practically unlimited powers on the mayor and aldermen, with one check only. That check is the initiative and referendum. Remove it, and the people of that city are powerless, except at the polls, and then only at long intervals. (g) The initiative and referendum methods of legislation with respect to municipalities as well as the State at large, have, in other jurisdictions, been sustained as constitutional, with scarcely a dissent. Oregon v. Tel. Co., 53 Ore. 162, 223 U. S. 118; Kadderly v. Portland, 44 Ore. 118; Kiernan v. Portland, 57 Ore. 459; In re Pfahler, 150 Cal. 71; Graham v. Roberts, 200 Mass. 152; Hantig v. Seattle, 53 Wash. 432; Hindman v. Boyd, 84 Pac. (Wash.) 609; State v. Paul, 151 Pac. (Wash.) 116. See, also, cases from Ohio, Oklahoma, Texas, Kansas and other jurisdictions, cited under our point one.

OPINION.

I.

BOND, J.—Plaintiff, a taxpaying citizen, sued to enjoin the holding of an election on the 29th of February, 1916, for the adoption of two ordinances proposed under article 5 of the charter of St. Louis, reserving to the people of that city the power "known as the initiative."

The ordinances to be submitted to a ballot are referred to in the petition by number and title, and provide for "the use of separate blocks for residence by white and colored races and for the gradual complete occupancy of blocks by one of the two races to the exclusion of the other."

The ground of the petition is the alleged unconstitutionality of the provisions of the charter with reference to the exercise of the initiative in legislation, and the misappropriation of public money for the holding of the election. The defendants, the board of election commissioners, the city comptroller and the city treasurer, demurred, whereupon the petition was dismissed, and plaintiff appealed to this court where the cause was advanced for public reasons.

## II.

The rule is apodeictical that the charter of a municipal corporation or a State statute will not be held to violate the Constitution if any other rational interpretation or construction can be given to it. [State ex rel. v. Kirby, 260 Mo. l. c. 127; State ex rel. v. St. Louis, 241 Mo. l. c. 247; State ex rel. v. McIntosh, 205 Mo. l. c. 602; State ex rel. v. Warner, 197 Mo. l. c. 656; Ex parte Loving, 178 Mo. l. c. 203.]

Municipal Initiative Legislation.

This maxim is particularly applicable to the framework of our State government, for the Constitution of Missouri is only limitative of the plenary power to legislate reserved to the people of the State, who may exercise it through the law-making body, or its auxiliaries in government, or by the initiative except to the extent they have restrained themselves by the prohibitions of the Constitution. [Harris v. Bond Co., 244 Mo. l. c. 687; McGrew v. Railroad, 230 Mo. 496; State ex rel. v. Warner, 197 Mo. 650; State ex rel. v. Sheppard, 192 Mo. 497.]

In that respect our State government differs from the Federal republic whose law-making body derives its only power to act from the grants contained in the Constitution of the United States; while the State Legislature may enact any laws not forbidden by the State or Federal Constitutions. It follows that the relation of the State Legislature to our Constitution

is the antinomy of the relation of Congress to the Federal Constitution.

The same principle governs the action of a municipal corporation which in its public capacity as an agent of the State government, may amend its charter in any manner or enact ordinances for any purpose not in conflict with the Constitution and the laws, State and Federal.

The crux of this case is whether the inclusion in the amended charter of the provisions giving to the people the *additional* right to legislate by the initiative plan is prohibited by the language of the Constitution (Art. 9, sec. 22), which provides for the amendment of the charter of the city of St. Louis.

It is claimed that the amended charter, though otherwise regularly framed and adopted, contravened the Constitution by the inclusion therein of the power to legislate through an instrumentality different from the one referred to in the Constitution. The argument being that by referring to a ''house of legislation'' and requiring that any amendment of the charter should ''provide at least'' one of these, the Constitution *impliedly* prohibited any further provision for an additional mode of legislation. To determine this point, it is necessary to consider the language of the Constitution providing what shall be the character and the contents and the method of adoption of a new charter of the city of St. Louis. So much of the language as is pertinent to the inquiry is, to-wit:

''Which said charter shall be in harmony with and subject to the Constitution and laws of the State, and shall provide, among other things, for a chief executive and at least one house of legislation to be elected by general ticket.'' [Mo. Constitution, art. 9, sec. 22, Amendment adopted in 1902.]

It is not contended that the charter under review fails to meet the requirements of this language in any other respect than that it gives the people the right to

legislate by ballot if the one "house" of legislation fails to act upon the certification to it of petitions showing the measures which the people request them to adopt. [New Charter of St. Louis, art. 5, page 45, sections 1 to 6 inclusive.]

The plan incorporated in the amended charter conditions the right to its exercise upon the inaction of the board of aldermen and in that respect it lacks the full faculty of legislation which was reserved to the people of the State in the amendment of the Constitution in 1908. [Constitution of Missouri, art. 4, sec. 57.] But with this exception and others necessary to make it workable and applicable to municipal purposes and limits, the plan is the same as that embodied in the State Constitution construed in State ex rel. v. Carter, 257 Mo. 52, and is practically identical with the powers given to cities of the second and third classes by the General Assembly in 1913. [Laws 1913, pp. 443-4, sec. 29; Laws 1913, p. 530, sec. 20 et seq.; Barnes v. Kirksville, 266 Mo. 270.]

Hence it is evident that the feature of the charter under review is completely congruous with the constitutional policy that the people of the State at large should enjoy the right of the initiative, and also with the declared policy of the State expressed in the above acts of the Legislature granting the same powers as to the local administration and providing for their inclusion in the charters of the cities of the State. In view of this declaration of the public policy of this State through the medium of the highest exponents thereof, the Constitution and the General Assembly, we may dismiss from view any consideration of the suggestion that the amended charter of the city of St. Louis is out of harmony with the Constitution or laws of the State in so far as it provides for the exercise by the people of that city of the power to legislate by the initiative.

## III.

It only remains to inquire whether there is anything in the above language of the Constitution which prohibits expressly or by necessary implication One House. the enactment of so much of the amended charter as secures to the people of St. Louis a qualified power to legislate in this mode? All that the Constitution contains in reference to any instrumentality of legislation is comprised in these words; to-wit, "shall provide among other things . . . at least one house of legislation." This requirement was completely provided in the new charter by creating a board of aldermen who were given legislative power subject to the limitations therein. [New Charter of St. Louis, art. 4, sec. 1.] Having prescribed that one house of legislation would be enough, the Constitution does not prohibit, but impliedly permits the addition of any other house or body with the capacity to legislate. The only restriction placed by it upon the framing of a new charter is that it must provide "at least one" of such legislative bodies. This necessarily left the people free to give legislative functions to another body, for it simply required that the number should not be less than one.

The use of the words "at least" *ex vi termini* are only a restriction against dispensing with one house of legislation, but does not forbid nor prohibit the use of *more* than one house of legislation. So, under the language of the Constitution it would have been entirely lawful for the new charter to have retained the bi-cameral body which was the earlier form of legislation in St. Louis. But is was one of the purposes of the subsequent constitutional amendment (containing the language under review) to enable the people of St. Louis to dispense with the ancient form or to readopt it, or to provide different methods of legislation with the single qualification that whatever mode

should be devised it must include at least one house, or legislative body, after which the makers of the new charter were left free to provide, without restriction or prohibition, any mode of legislation in harmony with the Constitution and laws of the State. 'This provision of the Constitution was fully effectuated by the adoption of the scheme contained in the new charter which provides for one house of legislation and an auxiliary thereto, known as the Initiative.

A careful analysis of the sections of the present charter referring to the exercise of this auxiliary power to legislate, shows that it cannot be exercised at all unless the board of aldermen shall fail to adopt a proposed ordinance submitted to them by the people of the city. Plainly this contrivance does not deprive the board of aldermen of the power to originate and enact laws, for it leaves them with full authority so to do and merely guards against their refusal to enact a local law which is approved by a majority of the qualified voters of the city; for unless it is supported by a majority of the voters it could not carry at the election and would never become a law.

It is of the very essence of free government that the laws regulating a community should reflect the view and voice of a majority of its voters. Hence the plan (initiative) by which the people are empowered to do the business which their recalcitrant representatives have failed to perform, has met with full judicial sanction. [In re Pfahler, 150 Cal. 71; Pacific States T. & T. Co. v. Oregon, 223 U. S. 118.]

We are unable to find anything in the language of the Constitution under review which prohibits the people of St. Louis, after having provided in their charter for one house of legislation, to reserve to themselves the power to legislate in case of the refusal of that body to act. There being no restriction express or implied in the language of the Constitution of the State against the inclusion of this faculty in the

charter, and it being plain to a demostration that the power thus reserved is not inconsistent with the laws of the State or nation, we hold that the petition framed on the theory of the unconstitutionality of the initiative provisions of the charter stated no cause of action and the demurrer thereto was well taken.

## IV.

The record shows that the election to adopt or reject the ordinances proposed by the initiative method of legislation, has not yet been held. The question of the constitutionality of these laws is not, therefore, now presented for decision; for during the process of legislation in any mode, the work of the lawmakers is not subject to judicial arrest or control, nor open to judicial inquiry. [State ex rel. v. Meier, 72 Mo. App. l. c. 626; Dreyfus v. Lonergan, 73 Mo. App. l. c. 346; State ex rel. v. Gates, 190 Mo. l. c. 559 et seq.; Glasgow v. St. Louis, 107 Mo. l. c. 203.] But after the lawmaking department of the government in any of its forms or by any of its agencies has finished its work and the act of legislation in which it was engaged has become *fait accompli* and is clothed with the outward forms of law, the question of the constitutionality of the completed bill or ordinance becomes one for ultimate determination by the judiciary.

## V.

Nor can it be doubted what judgment would be given if it were shown that a law had been enacted violative of the fundamental principle upon which the government of the State and nation is founded, or destructive of the legal rights of person or property of any citizen or class of citizens of the United States. [Constitution of the United States, Amendment 14.] For it must be borne in mind that no citizen of this State has any legal or political right which does not belong to every other who has not forfeited it by conviction of crime.

Distinctions based on character, culture and leadership are inherent in progressive society and exclusively regulated by that association; but they find no recognition or enforcement in judicial tribunals when called upon to decide the natural rights of all persons "to life, liberty and enjoyment of the gains of their own industry," to secure which is the chief design of government. [Constitution of Missouri, art. 2, sec. 4.]

In upholding the rights of a "*ward*" of the nation (an Indian) to the equal protection of the law it was said:

"It is part of the American creed—expressed in the chart of our liberties—that all men are created equal before the law. In the administration of justice, neither race, rank, nor riches confers any advantage on its possessor over any other person. These accidents are not permitted to mar the wisdom and purity of laws made for the equal protection of every human being. Upon this principle we have builded, on this continent, the fairest fabric of freedom which has met the eye of Time." [Whirlwind v. Von der Ahe, 67 Mo. App. l. c. 630.]

For the reasons given in the former paragraphs of this opinion the judgment in this case is affirmed. *Woodson, C. J.,* and *Graves, J.,* concur; *Faris, Blair* and *Revelle, JJ.,* concur to all except as to paragraph five, as to which they express no opinion.