HUNT C. MOORE v. DWIGHT H. BROWN, The Secretary of the State of
Missouri, Appellant.—No. 38381.—165 S. W. (2d) 657.

Court en Banc, November 12, 1942.

*Roy McKittrick,* Attorney General, *W. O. Jackson, Tyre W. Burton* and *Russell C. Stone,* Assistant Attorneys General, for appellant.

*John G. Madden, James E. Burke* and *Madden, Freeman & Madden* for respondent.

ELLISON, C. J.—This is an advanced appeal from a judgment of the circuit court of Cole county granting a permanent injunction restraining the Secretary of State from certifying or printing on the official ballot for the November, 1942, regular general election, the ballot title and number of a proposed amendment of Art. IV of the Missouri Constitution, which would have added a new section, 46a. The amendment was proposed by petition, for submission to popular vote under the power of initiative reserved to the people by Sec. 57, Art. IV and Secs. 1 and 2 of Art. XV of the Constitution, and Secs. 12286-12295, R. S. 1939, Mo. R. S. A. ■■■ secs. 12286-12295. The measure was to be known on the ballot as Amendment No. 5, and provided in substance that there shall "annually stand appropriated out of any money in the general revenue of the State of Missouri the sum of $29,000,000," to pay a monthly grant to designated incapacitated persons over 65 years old, and in aid of dependent children. (Italics in quotations hereafter are ours.)

Said Sec. 57, Art. IV ever since its adoption in 1908 has provided that in submitting such petitions for an initiative measure the Secretary of State "shall be guided by the general laws . . . until legislation shall be especially provided therefor." The above specific statutes were enacted in 1909 pursuant to that implied mandate. Sec. 12287 provides that to the initiative petitions shall be attached "a full and correct copy of the title and text of the measure so proposed . . ." Sec. 12289 provides that: "On showing that any petition filed is not *legally sufficient,* the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure." Said Secs. 1 and 2, of Art. XV, adopted about twelve years later, provide: "This Constitution may be revised and amended only in pursuance of the provisions of this article or as otherwise provided in this Constitution;" and that "No proposed amendment shall contain more than one amended and revised article of this Constitution or one new article which shall not contain more than one subject and matters properly connected therewith."

Respondent's petition for injunction in this case was drawn under said Sec. 12289. It alleged the initiative petition was not "legally sufficient" within the meaning of that expression as used in the statute; and that the appellant Secretary of State therefore should be enjoined from certifying the proposed amendment for the election ballots. The reasons assigned (so far as pertinent here) were that the proposed *amendment,* as attached to the initiative petition, contains more than one amended and revised article, in that it actually amends several (specified) articles and sections of the Constitution

other than the one it purports to amend; and that it contains more than one subject; all in violation of said Secs. 1 and 2, Art. XV; Sec. 57, Art. IV; and Secs. 12287 and 12289, supra. This contention is based on State ex rel. Halliburton v. Roach, 230 Mo. 408, 130 S. W. 689, 139 Am. St. Rep. 639.

Contrary to the theory of the injunction petition, the appellant Secretary of State contends the statutory words "legally sufficient" in Sec. 12289 do not refer to the legality of the amendment; but only to that of the initiative *petition* in matters of form, signatures, etc., (as to which there was no challenge in the injunction petition.) He cites four decisions from Oregon, Arizona and North Dakota where the statutes are nearly the same.[1] The appellant's further contentions are: that the Halliburton case has been overruled by subsequent Missouri decisions; that the courts have no power to interfere with legislative processes while they are being exercised either by the General Assembly or by the people through the initiative, but can pass on the constitutional validity of a measure only after its adoption; and, finally, that the proposed amendment does not contain more than one amended or revised Article of the Constitution, or more than one subject and matters properly connected therewith, in violation of Article XV, supra.

For the purposes of the case we shall concede the courts cannot interfere with legislative processes *in fieri* unless the Constitution so *provides*, Pitman v. Drabelle, 267 Mo. 78, 89 (IV), 183 S. W. 1055, 1057 (3); although there is authority in other jurisdictions holding they may do so when such processes are *in fact* unconstitutional.[2] But on either theory, it is fundamental that the people, themselves, are bound by their own Constitution, 1 Cooley on Constitutional Limitations (8 Ed.), p. 81. Where they have provided therein a method for amending it, they must conform to that procedure. Any other course would be *revolutionary*, the cases have said.[3] And whether the prescribed procedure is being followed is a matter for judicial determination when the organic law permits such inquiry while the legislation is in process.

This latter question must be settled at the outset. Do Sec. 57, Art. IV and Secs. 12287 and 12289, enacted pusuant thereto, per-

[1]State ex rel. Carson v. Kozer, 126 Ore. 651, 646, 270 Pac. 513, 515; State ex rel. v. Olcott, 62 Ore. 277, 279, 125 Pac. 303, 304; State ex rel. Bullard v. Osborn, 16 Ariz. 247, 250, 143 Pac. 117, 118; Anderson v. Byrne, 62 N. D. 218, 228, 231, 242 N. W. 687, 691, 693.

[2]Winget v. Holm, 187 Minn. 78, 80-1, 244 N. W. 331, 332(2); Mathews v. Turner, 212 Iowa 424, 427, 236 N. W. 412, 416(4); State ex rel. Linde v. Hall, 35 N. D. 34, 37, 159 N. W. 281, 283 et seq.; Ellingham v. Dye, 178 Ind. 336, 385(10), 99 N. E. 1, 19(4), Ann. Cas. 1915C, 200.

[3]12 C. J., sec. 18, p. 682, sec. 24, p. 688; 17 C. J. S., sec. 7a, pp. 28-31; 11 Am. Jur., sec. 22, pp. 626-7, sec. 25, p. 629; sec. 32, p. 638; Erwin v. Nolan, 280 Mo. 401, 407, 217 S. W. 837, 839(1, 2); Gabbert v. C., R. I. & P. Ry. Co., 171 Mo. 84, 98, 105, 70 S. W. 891, 894, 897.

mit us to scrutinize the proposed amendment, as distinguished from the initiative petition? We look first to the Oregon, Arizona and North Dakota cases cited in the margin, supra. All of them support appellant's contention that the words "legally sufficient" refer to the initiative petition, or, as the Kozer case puts it more broadly, to "the *procedure* prescribed by the statute for getting an initiative measure on the ballot." The Byrne case by implication says the only questions open are "questions of constitutionality on account of the form and procedure employed." Three of these decisions, the Kozer, Osborn and Byrne cases, sustain his further contention that the statute does not authorize the courts to enjoin submission of a measure to the voters on the ground that it *would be* unconstitutional if adopted.

But these cases refer only to substantive unconstitutionality. They do not hold submission of a measure cannot be enjoined for procedural unconstitutionality. This is made clear by the fact that in each of them the grounds for injunction alleged were substantive constitutional defects in the measure proposed. The bill in the Kozer case charged the measure there would be void if adopted because it was obscure and uncertain in meaning and its enactment would cause irreparable damage to the state. In the Osborn case the sole contention was that the measure was special legislation. In the Bryne case it was asserted the proposed measure would surrender the police power and violate vested rights and due process. Only the initiative petition, and not the proposed measure, was attacked in the Olcott case.

The Halliburton case, supra, on which respondent relies, was decided by this court en banc in 1910, and involved the processes prescribed by Sec. 57, Art. IV through said statutes (now) Secs. 12287 and 12289. The initiated measure there on its face proposed to amend said Sec. IV of the Constitution by striking out Sec. 11 thereof and substituting a new section of the same number, which redistricted the state senatorially for the then current decade (1910-1920) and provided the same should be done decennially thereafter by law or vote of the people. Sec. 7 of the same Article provided such redistricting should be done by the General Assembly, and in default of such legislative action by the Governor, Secretary of State and Attorney General. This integrally related Sec. 7 was wholly ignored by the initiative petitions and the proposed amendment. It was not mentioned directly or indirectly. The Secretary of State refused to file the petitions, claiming they were not "legally sufficient." A citizen brought mandamus in this court under Sec. 12289, supra, and a peremptory writ was denied.

There were two majority opinions in the case, one by Fox, C. J., and one by Graves, J. The basic holdings on which the respondent now mainly relies, were these. The Graves opinion ruled a proposed measure is an essential part of the initiative petition presenting it, in view of the requirement of (now) Sec. 12287, supra, that "a full and

correct copy of the title and text of the measure so proposed" be attached to each petition and referred to therein. It further held this made the words "legally sufficient" in (now) Sec. 12289, refer to the measure as well as to the initiative petition. The Fox opinion held the provision of Sec. 12287, just quoted, meant the full text of the *desired* amendment must be shown, thereby requiring a disclosure of what sections of the Constitution were to be amended, so the signers of the petitions might understand what they were signing. It amounted to saying the measure must show not merely its *pre*text but its authentic text, as where we refer to the text of the Scriptures. On this theory the decision held the initiative petitions were legally insufficient because they failed to disclose that Sec. 7 as well as Sec. 11 of Art. IV was being amended. This decision unquestionably is in point.

This brings us to the next question—whether the Halliburton case has been overruled. Appellant affirms it was overruled by State ex rel. Stokes v. Roach (Mo. ▮▮▮ banc), 190 S. W. 266, 279, 280; that State ex rel. Lashly v. Becker (banc), 290 Mo. 560, 578, 235 S. W. 1017, 1020, stated, "It should further be considered that it is a doubtful question as to whether or not (the Halliburton case) has any further binding effect in Missouri," citing the Stokes case; and that Marsh v. Bartlett (banc), 343 Mo. 526, 535(3), 121 S. W. (2d) 737, 741(4) declared, it "was disapproved by a majority opinion in the Stokes case, supra." The Lashly and Marsh cases did make those statements, but they are incorrect. The Halliburton case could not have been overruled by the Stokes case because the principal opinion in the latter had the full concurrence only, of its author and two other judges, another judge concurring only in the result, and three judges dissenting. It therefore was binding only as to the result reached therein, and did not overrule prior inconsistent decisions, State ex rel. Dengel v. Hartmann, 339 Mo. 200, 204, 96 S. W. (2d) 329, 330(3), and many other cases cited in 8 West's Mo. Dig., "Courts," sec. 90(2).

So we conclude the Halliburton case was not overruled by the Stokes case on the point to which it is now cited, namely: that a proposed amendment by the *initiative* must disclose what integrally related provisions of the Constitution it is changing, and that the initiative petition will be legally insufficient if that showing is not made. That rule (we say by way of interpolation) is based on facts wholly different from those arising when a proposal is made by *referendum* to reject a particular legislative act. There, the proposal is specific and the effect of it·clear. Now let us look once more at the chronology up to the time when the present Art. XV was adopted in 1920. The original initiative and referendum amendment, Sec. 57, Art. IV, had been adopted in 1908, calling for the enactment of specific statutes to guide the Secretary of State in submitting such measures. Those statutes, now Secs. 12287 and 12289 (and others)

were passed the next year, 1909. The following year, 1910, they were construed as above by the Halliburton case. Thus a complete procedure was built up. Four years afterward, in 1916, the ineffectual Stokes case flashed and died. The Lashly decision was not rendered until December, 1921, a year after Art. XV had become a part of the organic law; and the Marsh case was decided only four years ago, in 1938.

Having the existing state of the law before them in 1920, what must the sponsors of the amendment and the voters have understood when they adopted the present Art. XV? Sec. 1 thereof was framed with special reference to what had gone before. Sec. 1 of the original Art. XV, a part of the Constitution of 1875, had provided: "This Constitution may be amended and revised *only* in pursuance of the provisions of *this* article." Secs. 2 and 3 of the same Article provided for amendments in only two ways: on proposals by the General Assembly, or by a Constitutional Convention. When Sec. 57, Art. IV was adopted in 1908 it provided a third way, by the initiative; and therefore amended or modified Sec. 1 of the old Art. XV by necessary implication. To meet that situation and make other desired changes, the Constitution was amended twelve years later by repealing the old Art. XV and substituting the present Article. Section 2 thereof makes express provision concerning amendments by the initiative. And in Sec. 1, the language of the old Sec. 1, quoted above, was modified by adding the phrase, "or as otherwise provided in this Constitution;" thereby letting in the provisions of Sec. 57, Art. IV, the procedural statutes passed pursuant thereto, and any decisions construing them—which means the Halliburton case.

That the people must have so understood is shown by this incident. Two years later an amendment of Sec. 57, Art. IV was formulated and proposed by the Constitutional Convention of 1922, but failed of adoption in the subsequent election. That amendment omitted any call for the passage of procedural statutes. The Journal of the Convention for the 181st day, page 12, shows that in the course of his report on the amendment, as a member of the Committee on Phraseology, Mr. Williams said: "You will see that in the last paragraph it (the present Sec. 57, Art. IV) provides that the 'Secretary of State and all other officers shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor.' We have omitted that *because legislation has been provided* for the execution of the initiative and referendum petitions insofar as legislation is required." In this connection no objection was made by anyone to the holding in the Halliburton case that a proposed amendment was to be regarded as a part ▮▮▮ of the initiative petition to the extent already stated, although the Convention at the time was redrafting the section and is presumed to have known

of that construction. State ex rel. Bd. of Control v. St. Louis, 216 Mo. 47, 94, 115 S. W. 534, 547.

We think the foregoing sufficiently shows that the Halliburton case must be accepted as authority on the proper construction of Sec. 57, Art. IV and Sec. 1, Art. XV. But this further is to be noted. Respondent has invoked Sec. 2 of Art. XV in his injunction petition and brief, charging that the proposed amendment contains more than one article in violation of said section, *because* it amends several specified articles and sections of the Constitution beyond its purport; and also because it contains more than one subject. Appellant denies this. We are tentatively inclined to the latter view unless, perhaps, it can be said the amendment grants benefactions to two separate and unrelated classes of people: (1) indigent and incapacitated aged persons; (2) dependent children. But it is unnecessary to determine that question, for reasons now to be stated.

The general rule is that one constitutional amendment may change several articles or sections of a Constitution if all these changes are germane to a single controlling purpose. In such case it does not contain two amendments or two subjects, and cannot be said to violate Sec. 2, Art. XV for that reason. 12 C. J., sec. 26, p. 691; 16 C. J. S., sec. 9, p. 44; 11 Am. Jur., sec. 31, p. 635; Gabbert v. C., R. I. & P. Ry. Co., 171 Mo. 84, 101, 105, 70 S. W. 891, 897. Furthermore, if the amendment be double or multifarious the defect is *substantive,* and the measure will be void even if adopted, as appears from the citations just made. The theory is that the people ought not to be required to vote on two or more separate propositions as one, so that they must either accept or reject both; also that such a course permits logrolling. But if the measure will be void though adopted, it is not so important that injunctive relief be allowed to prevent its submission. About all that would be saved is the work and expense of the election—though a number of decisions hold that a good ground. On the other hand if the measure will be valid if adopted, it is highly important that adequate information be given concerning it, and that in default thereof a means be afforded to prevent its submission.

We think Art. XV observes that distinction. Sec. 2 thereof provides that *no* proposed amendment shall contain more than one article or subject.. This obviously refers to *all* amendments, whether proposed by Constitutional Convention, the General Assembly or the initiative; and shows the requirement of singleness is regarded as essential and substantive. But Secs. 1 and 2 of the Article also recognize Sec. 57, Art. IV, and the aforesaid statutes enacted pursuant thereto, providing alone for the proposal and submission of amendments by the initiative. And while amendments proposed in *any* of the three authorized ways must be submitted to popular vote, yet only with respect to amendments by the initiative is the requirement made that the *full text* of the measure be disclosed *before* it is sub-

mitted, including cognate constitutional provisions which will be amended or repealed by implication; and that if the initiative petitions are not thus legally sufficient, the courts may interfere by injunction to prevent submission of the measure.

Probably this special preliminary procedure was allowed only in the case of initiated amendments on the assumption that those proposed by a deliberative body, such as the General Assembly or a Constitutional Convention, would be more carefully drawn. But the point we have in mind is that the procedure *is* preliminary; may be waived by a failure to invoke injunctive relief; and applies only to amendments by the initiative. This indicates that the sufficiency of the initiative petition and annexed measure—as regards the requirement that they disclose what constitutional provisions are sought to be amended—is not a substantive requirement. If it were, there could be no such thing as implied repeal or amendment by an initiative measure, of earlier constitutional provisions. The procedure has nothing to do with the published notice[4] which is a part of the submission of the amendment to the *voters*. It does not say the amendment will be void if it does change more than one article or section of the Constitution; but only that such changes must be shown. It is a statutory safeguard allowed to protect the *signers* of the initiative petitions, as the Halliburton case says.

We therefore hold said requirements of Secs. 12287 and 12289 are not substantive, and that an amendment cannot be held void after adoption because such requirements were disregarded. This is in harmony with express provisions to the same effect in the Constitutions of Arkansas, Amendment 7, Sec. 1, ''Court Decisions'' and North Dakota, Art. II, Sec. 25. In both these states the sufficiency of initiative petitions may be decided by the Secretary of State in the first instance, subject to review by the Supreme Court. But the failure of the Court to decide the question before the election, or before the time for placing the amendment on the ballot, will not invalidate the amendment if it be adopted in the election. Similarly, the New York State Constitutional Convention Committee in 1938 published the constitutions of all the States and the United States, and also a so-called ''model constitution,'' in a Volume III of the reported proceedings of the New York Constitutional Convention of 1915. Sec. 38 of that model constitution contains the same provision. See also: State ex rel. Laird v. Hall, 49 N. D. 11, 17, 186 N. W. 284, 286-7; Larkin v. Gronna, 69 N. D. 234, 241, 285 N. W. 59, 63 (6-8). And there is an analogous decision in this state holding that where a primary election contest is not decided before the general election at which the contestee is elected, the case becomes moot.

[4] As to which see: Sec. 2, Art. XV, Const. Mo., p. 168c; Sec. 11677, R. S. 1939, Mo. R. S. A., sec. 11677.

State ex rel. Conran v. Duncan, 333 Mo. 673, 679-80, 63 S. W. (2d) 135, 137 (1-2). In such event the validity of a constitutional amendment proposed by the initiative must be tested by the general law, the same as any other.

One more point should be considered. We have just indicated the view that existing constitutional provisions may be amended or repealed by implication though an initiative amendment. But in any case such repeals are not favored, and there must be irreconcilable repugnance between the two. 12 C. J., sec. 58, p. 709; 16 C. J. S., sec. 26, p. 67, sec. 42b, pp. 89-90; 11 Am. Jur., sec. 54, pp. 663-4. All the more should this be true when such repugnancy must be pointed out in the abstract, and not in a pending controversy based on facts. Time alone can ferret out all the consequential and remote conflicts between statutes or constitutional provisions in all their implications. We therefore think the requirement in the Halliburton case that the proposed amendment disclose the constitutional provisions it seeks to change, refers only to cognate provisions which are in direct conflict—as were the ones in that case.

Such a requirement is not unreasonable but a wholesome precaution. A constitution declares the fundamental law and should take a long range view of social needs, allowing for but not being based wholly on temporary or cyclic conditions. The best results can be obtained only through a full understanding of the constitutional changes proposed and those needed. There is opportunity for full discussion of these questions when the changes are formulated by a deliberative body representing the whole people; but not so when the amendment is proposed and promoted by any self-serving group. Further, it obviously would be a fraud on the signers of an initiative petition to procure their signatures on the inducement that it proposes a constitutional amendment greatly in their interest, when in fact it makes other undisclosed changes greatly to their detriment.

We may concede the Halliburton case went to the verge of construction in giving Sec. 12287 the meaning it did. But it was decided in 1910, just a year after the statute was enacted. It had not been overruled when the Present Art. XV was adopted in 1920, and, as we have already stated, both Sections 1 and 2 of that amendment let in and recognized the older Sec. 57, Art. IV, and said statute as the Halliburton case construed it. For that reason we abide by the ruling, although the constitutions of several states contain a provision similar to that of Sec. 12287, requiring the initiative petition to "contain," "include" or "set forth" the full text of the proposed amendment, and we have not found in any one of them a decision like the Halliburton case, construing such language as requiring the measure to specify the Articles and Sections which will be changed by it.

270

However there are provisions in many of the State Constitutions which recognized that it is dangerous business to amend basic law directly by the initiative; and many requirements have been made to insure that the people will be fully informed as to the consequences of such legislation. So far as we have found the power to propose constitutional amendments by the initiative exists in only 12 states. Many restrict the subjects to which the power extends; and Massachusetts excludes, for instance, the power to make appropriations of money. ▮▮▮ Some states require initiative proposals to be addressed to· the Legislature in the first instance. And Sec. 3, Art. XVII of the Constitution of Michigan expressly provides (precisely as the Halliburton case holds) that ''All proposed amendments to the constitution submitted to the electors shall be published in full, *with any existing provision of the Constitution which would be altered or abrogated thereby,* and a copy thereof shall be posted at each registration and election place.'' Still other States require explanations or arguments for and against the proposed amendment to be printed therewith and mailed to each elector. Constitutions of: California, Art. IV, Sec. 1; Massachusetts, Art. XLVIII ''General Provisions,'' Sec. 4; North Dakota, Art. II, Sec. 25; Ohio, Art. II, Sec. 1g; Washington, Amendment 7, Sec. 1d.

▮▮ Applying the rule of the Halliburton case, the proposed amendment in this case is in direct conflict with at least three other closely related provisions of the Constitution. It provides that ''There shall *annually stand* appropriated out of *any* money in the general revenue of the State of Missouri the sum of $29,000,000,'' to pay· grants to specified aged persons and in aid of dependent children. On the other hand Sec. 43 of the same Article provides that ''*All* revenue collected and moneys received by the State from any source whatsoever shall go into the treasury, and the General Assembly shall have no power to divert the same, or to permit money to be drawn from the treasury, except ·in pursuance of regular appropriations made by *law.* All appropriations ؛ . . shall be made in· the following order:''. Then follows an enumeration of the order in, and purposes for, which the money may be appropriated, as follows: (1) interest on bonded debt; (2) sinking fund; (3) free public school purposes; (4) cost of assessing and collecting the revenue; (5) payment of the civil list; (6) support of eleemosynary institutions; (7) other purposes.

From this it will be seen the proposed amendment takes the power of appropriating *all* revenue in the state treasury out of the hands of the General Assembly and constitutionally makes a direct, annual appropriation therefrom of the enormous sum of $29,000,000 to the class or classes of persons named. It also places that appropriation at the top of the list, ahead of the public debt, public schools, cost of collecting the revenue, expenses of the state government, eleemosynary institutions, etc.

It further conflicts with Sec. 19, Art. X, which provides: "No moneys shall ever be paid out of the treasury of this State, or any of the funds under its management, except in pursuance of an appropriation by *law.*" (Remember also that Sec. 43, Art. IV, supra, provides no money shall be withdrawn from the treasury except in pursuance of regular appropriations made by *law.*) Now a clear distinction between the words "law" and "constitutional amendments" is drawn by the initiative and referendum provision, itself, Sec. 57, Art. IV, supra. It says "the people reserve to themselves power to propose laws *and* amendments to the Constitution." Laws are *statutes.* The proposed amendment here automatically would make the standing appropriations specified, *constitutionally.*

And finally the proposed amendment conflicts with Sec. 7, Art. XI. That section provides: "in no case shall there be set apart less than twenty-five per cent of the State revenue, exclusive of the interest and sinking fund, to be applied annually to the support of the public schools." The words "State revenue" as used in this section may not be quite as broad and inclusive as the phrase "any money in the general revenue fund" used in the proposed amendment, State ex rel. Gass v. Gordon, 266 Mo. 394, 408-9, 411, 181 S. W. 1016, 1020-1. (We shall not turn aside to consider that question.) But whether it is or not, here again we find the proposed amendment for its special purposes has seized upon a very substantial part (about one-half) of the revenue pledged by said Sec. 7, Art. XI to the public schools—and would take *all* of the general revenue fund each year if it did not exceed $29,000,000.

For the reasons stated, and following the Halliburton case, we think the learned trial judge ruled correctly in granting a permanent injunction restraining the certification of the amendment for submission to the voters.

Judgment affirmed. All concur.