UNION ELECTRIC COMPANY, a Corpo-
ration and James T. Friel, an Individu-
al, Plaintiffs-Respondents-Appellants,

and

Missouri Public Service Company, a
Corporation, et al.,
Intervenors-Respondents,

v.

James C. KIRKPATRICK, Secretary of
State of Missouri, Defendant-Appellant,

Electric Ratepayers' Protection Project, a
Corporation and Steve Sorkin, an Indi-
vidual, Intervenors-Defendants-Appel-
lants.

No. 66482.

Supreme Court of Missouri,
En Banc.

Oct. 24, 1984.

John Ashcroft, Atty. Gen., Edward D. Robertson, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, for defendant-appellant James C. Kirkpatrick.

Lewis C. Green, Rusty Green, St. Louis, for intervenors-defendants-appellants-respondents.

Francis X. Duda, Ann E. Buckley, Joseph E. Birk, St. Louis, Gary W. Duffy, Jefferson City, for plaintiffs-respondents-appellants.

WELLIVER, Acting Chief Justice.

Respondents Union Electric Company and James T. Friel, a registered voter in Missouri and a shareholder of Union Electric, filed this suit in the Circuit Court of Cole County challenging the Secretary of State's certification of an initiative petition popularly called "Proposition B" for inclusion on the ballot for the November 6, 1984 election. The circuit court rendered judgment for respondents and ordered the Secretary to remove the initiative from the ballot. An appeal initially was filed in this Court, but the cause was ordered transferred to the Missouri Court of Appeals, Western District, where jurisdiction was proper. Mo. Const. art. V, § 3. A panel of the court of appeals unanimously affirmed the circuit court's judgment. Thereafter the Western District, sitting *en banc*, overruled the motion for rehearing and by a divided vote sustained the Secretary's motion to transfer to the Supreme Court. Rule 83.02. Due to the limited time remaining for the printing and distribution of ballots, we have considered this appeal on an expedited basis. We reverse and direct that the initiative be placed on the ballot.

A group calling itself the Electric Ratepayers' Protection Project submitted to the Secretary of State an initiative petition calling for the enactment of a law entitled "A Proposed Act Respecting Electrical Corporations." The initiative has the stated purpose of "protect[ing] the consumers of electrical energy from unjust and unreasonable rates, and to protect the consumers and the economy from the impact of a sudden large increase in rates." Among its substantive provisions are measures authorizing deferrals or phase-ins of electric rates, a prohibition against unjustified cost overruns, and the exclusion of the cost of any nuclear fission thermal powerplant from the rate base of any electrical corporation until "there exists a demonstrated technology or means for the disposal of the high-level nuclear waste expected to be generated by the plant, and an acceptable geological medium for such disposal."

On September 5, 1984, the Secretary certified the initiative petition as having satisfied the pertinent constitutional and statutory requirements for initiation of a law. Immediately thereafter respondents filed a petition in the circuit court pursuant to § 116.200.1, RSMo Cum.Supp.1983, seeking

a declaration that the initiative petition was insufficient and seeking to enjoin the Secretary from certifying the initiative for inclusion on the ballot. The court allowed the Electric Ratepayers' Protection Project and one of its members, Steve Sorkin, to intervene as party defendants. Later the court granted leave to intervene as party plaintiffs to the Missouri Public Service Company, the Empire District Electric Company, St. Joseph Power & Light Company, Kansas City Power & Light Company and Arkansas Power & Light Company.

After a hearing, the court ruled that the Secretary had improperly certified the petition and ordered him to remove the initiative petition from the ballot. The court based its decision on two grounds. First, it found that the petition "in fact and legal effect" proposed a constitutional amendment. The court held that the petition was insufficient under article III, § 50 as a constitutional amendment because it lacked the required enacting clause and was not signed by eight percent of the legal voters in each of two-thirds of Missouri's congressional districts.[1] Second, the court held that the title of the initiative petition did not clearly express the subject matter of the proposal, as required by article III, § 50.

### I

In affirming the circuit court's judgment, the Western District relied solely upon the first of the two grounds. The court of appeals held that both the Secretary of State and the courts were obliged to determine whether the initiative satisfied necessary procedural requirements. According to the court of appeals, this entailed,

among other things, examining the substance of the proposal to determine whether in fact it proposed a law or a constitutional amendment. The court concluded that since, in its opinion, certain parts of the initiative were incompatible with existing provisions in the Missouri Constitution, the proposal had to be viewed as, and satisfy the requirements for, an initiative proposing a constitutional amendment.

We believe that the process of review undertaken by both the circuit court and the court of appeals fails to recognize the effect of the 1945 Constitution on *State ex rel. Halliburton v. Roach*, 230 Mo. 408, 130 S.W. 689 (banc 1910). *Halliburton* involved a constitutional amendment proposing the redistricting of senatorial districts. *Id.* 130 S.W. at 691. The Court noted that "[t]he mere calling it an amendment to the Constitution unless the subject-matter verifies the correctness of that name is not binding upon the respondent or upon this court." *Id.* at 695.

■ This holding in *Halliburton*, however, is no longer good law. Under the Constitution as it existed at the time of *Halliburton*, initiative measures on the ballot were not "readily identifiable as constitutional amendments or statutes." M. Faust, Constitutional Making In Missouri: The Convention of 1943–1944 72 (1971). As in the *Halliburton* case, this led people to make "use of the initiative to write into the Constitution—freeze into the Constitution, provisions which in reality are legislative in their character." The 1945 Constitution resolved the *Halliburton* problem by discouraging use of the initiative for constitutional amendments while encouraging use of the

---

1. Mo. Const. art. III, § 50 provides:

   Initiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state, and petitions proposing laws shall be signed by five percent of such voters. Every such petition shall be filed with the secretary of state not less than four months before the election and shall contain an enacting clause and the full text of the measure. Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall

   not contain more than one subject and matters properly connected therewith, and the enacting clause thereof shall be "be it resolved by the people of the state of Missouri that the Constitution be amended: ". Petitions for laws shall contain not more than one subject which shall be expressed clearly in the title, and the enacting clause thereof shall be "Be it enacted by the people of the state of Missouri: ".

   It should be noted that the court found that the petitions satisfied the five percent required for an initiative proposing a law.

process for statutes. "[T]he entire theory of the Committee in drafting this section 58 [now Sec. 50, Art. III] was to try to make it necessary for those people who want to write legislative matters into the constitution to so announce it by placing an enacting clause that says we are trying to write this matter into the constitution, ..." and getting the additional signatures on the proposed constitutional amendment. Debates of the Missouri Constitution 1945, Vol. 2, at 406. *See also id.* at 379–443. To this extent, *Halliburton* should no longer be followed.

▇▇▇ We also believe the holdings of the courts below to be contrary to a long line of decisions wherein we have held that, barring exceptional circumstances, we will not look behind the face of the petition to determine its constitutionality prior to its being voted on by the electorate. State ex rel. *Dahl v. Lange,* 661 S.W.2d 7, 8 (Mo. banc 1983); *Moore v. Brown,* 350 Mo. 256, 165 S.W.2d 657 (banc 1942); *Pitman v. Drabelle,* 267 Mo. 78, 183 S.W. 1055, 1057 (1916). We agree that the Secretary of State, and the courts asked to review this decision, may look beyond the face of the petition to the extent necessary to determine whether constitutional and statutory requirements pertaining to the form of the petition have been satisfied. *Moore v. Brown, supra;* § 116.120, RSMo Cum. Supp.1983; *cf. Kansas City v. McGee,* 364 Mo. 896, 269 S.W.2d 662 (1954). This limited inquiry, however, does not permit an evaluation of the merits of any constitutional objection to the proposal under the guise of determining whether the initiative petition in fact proposes a constitutional amendment. This conclusion follows from the fact that even if the law proposed by initiative conflicts with a constitutional provision, it becomes, if adopted by a majority of the voters, a law subject to constitutional challenge and not an amendment to the Constitution. *See Labor's Educational and Political Club-Independent v. Danforth,* 561 S.W.2d 339, 343 (Mo. banc 1977). It is not now necessary that we examine the alleged constitutional infirmities of the law proposed by Proposition B. Accordingly, we hold that the circuit court erred in

finding that Proposition B was a constitutional amendment and thereby subject to the eight percent signature requirement.

## II

The circuit court also held that the title of the initiative proposal did not clearly express the subject matter of the proposal, as is required by Article III, § 50. The Western District, in view of their holding, did not reach the trial court's second ground.

▇▇▇ We believe that the trial court was unduly concerned about the title and content of the circulated petitions. The petitions on their face said "Electric Ratepayers' Protection Project." The full act appeared on the back of each petition and was entitled "A Proposed Act Respecting Electrical Corporations." We cannot see how the signers could have been deceived or misled at this stage of the initiative process. *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 14 (Mo. banc 1981); *Union Electric Co. v. Kirkpatrick,* 606 S.W.2d 658, 660 (Mo. banc 1980). The important title test is whether the official ballot title prepared by the Attorney General pursuant to § 116.160.2, RSMo Cum.Supp.1983, fairly and impartially summarizes the purposes of the measure, so that the voters will not be deceived or misled. See § 116.190, RSMo Cum.Supp.1983. This question is not before us.

▇▇▇ Finally, respondents contend that the judgment of the circuit court can be affirmed on the ground that the initiative proposes a law unconstitutional on its face. We have indicated previously that courts have the discretion to consider at least in mandamus actions, allegations that an initiative is facially unconstitutional. *State ex rel. Dahl v. Lange, supra,* at 8. Respondents claim Proposition B is unconstitutional in that it draws an unreasonable distinction between electrical corporations and other utilities, deprives Union Electric of its right to a just return on its investments without due process of law, is retrospective in effect and impairs existing contract rights, and is preempted by federal legislation. We do not believe that respondents' allegations rise to the level of facial

unconstitutionality. Respondents numerous constitutional objections are not ripe for decision and we decline to address them in this proceeding. We will not "sacrifice the democratic process to the interest of judicial economy." *State ex rel. Dahl v. Lange, supra,* at 8.

The judgment is reversed with directions.

HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., concur.

BILLINGS, J., dissents in separate dissenting opinion filed.

MORGAN, Senior Judge, dissents and concurs in dissenting opinion of BILLINGS, J.

RENDLEN, C.J., not sitting.

BILLINGS, Judge, dissenting.

The trial court and the Court of Appeals held, correctly in my opinion, that Proposition B seeks to amend the Constitution; that because the petition fell short of the requisite number of signatories for submitting an amendment of the Constitution to the electorate, the proposal was not entitled to be placed on the ballot. Consequently, I dissent for the reasons stated in the divisional opinion of the Missouri Court of Appeals, Western District [1], attached hereto as an appendix, and would affirm the judgment.

APPENDIX

IN THE MISSOURI COURT
OF APPEALS

WESTERN DISTRICT

No. 36,326

Opinion filed:

October 5, 1984

APPEAL FROM THE CIRCUIT COURT
OF COLE COUNTY, MISSOURI

HONORABLE BYRON L.
KINDER, JUDGE

Before Turnage, C.J., Manford and Lowenstein, JJ.

1. Appellants' motions for rehearing were denied but the Western District voted 6 to 5 to transfer

The Electric Ratepayers' Protection Project, a corporation, presented an initiative petition to the Secretary of State for the enactment of a law entitled "A Proposed Act Respecting Electrical Corporations." The Secretary of State certified the petition was sufficient and designated the proposal as Proposition B.

Pursuant to § 116.200, RSMo Supp.1983, Union Electric Company and James T. Friel filed a petition in the Circuit Court of Cole County seeking to reverse the Secretary's decision. Thereafter, the court allowed the Project and Steve Sorkin to intervene, and subsequently allowed the Missouri Public Service Company, the Empire District Electric Company, St. Joseph Power & Light Company, Kansas City Power & Light Company, and Arkansas Power & Light Company to intervene. After a hearing, the court reversed the Secretary's decision and ordered him to remove Proposition B from the November 6, 1984, election ballot. The court held that the proposal in fact and in legal effect was a constitutional amendment, and Mo. Const. Art. III, § 50 required it to be signed by eight percent of the legal voters in each of two-thirds of Missouri's congressional districts. The court found the petition did not meet the eight percent requirement.

The Project and Sorkin appealed to the supreme court, but that court transferred the case by an order which stated that jurisdiction was vested in this court. The jurisdictional question was discussed in *Yes to Stop Callaway Committee v. Kirkpatrick,* —— S.W.2d —— (Mo.App.1984) (handed down concurrently with this case). The inquiry in the present case concerns the proposed law and does not involve the validity of any statute or constitutional provision. Therefore, jurisdiction is vested in this court.

On this appeal, the Project contends the trial court was not authorized to review the

the case to this Court.

constitutionality of the law proposed in the petition, and was required to hold that the petition proposed a law, not a constitutional amendment, because that was what the proposal stated on its face. The Project further contends that a court cannot interfere in the legislative process involved in an initiative by determining a statute's constitutionality before the people adopt it. The Project concludes that the Secretary's only function was to determine whether or not five percent of the legal voters in two-thirds of the congressional districts signed the petition, as required by Mo. Const. Art. III, § 50.

The issues in this case were decided in *Moore v. Brown*, 350 Mo. 256, 165 S.W.2d 657 (banc 1942). The only difference between *Moore* and this case is that *Moore* involved a proposed constitutional amendment. That difference is immaterial because the constitutional and statutory provisions relating to initiative petitions for constitutional amendments or laws are identical.

In *Moore* the court was confronted with the argument that courts cannot interfere with the legislative process by reviewing the constitutionality of a proposed law before its passage. The court began its analysis by stating the fundamental principle that the people are bound by their own constitution, and where they have provided a method for amending it, they must conform to that procedure. *Moore*, 350 Mo. at 263, 165 S.W.2d at 659[1, 2]. The court noted that any other procedure would be *revolutionary*. *Id.* (emphasis in original). The court further stated that whether the prescribed procedure is being followed is a matter for judicial determination when the organic law permits such inquiry while the legislation is in process. 350 Mo. at 263, 165 S.W.2d at 660.

The *Moore* court drew a distinction between substantive unconstitutionality and procedural unconstitutionality, and relied on *State ex rel. Halliburton v. Roach*, 230 Mo. 408, 130 S.W. 689 (banc 1910).[1] The court stated that in *Halliburton*, the pertinent statute required a full and correct copy of the title and text of the proposed measure to be attached to each petition, and noted that *Halliburton* held that this made the words "legally sufficient", as used in § 6750, RSMo 1909, refer to the proposed measure as well as the initiative petition. *Moore*, 350 Mo. at 264–65, 165 S.W.2d at 660. The *Moore* court concluded that, under the law, a court may look to the measure proposed and determine whether or not it meets the constitutional and statutory requirements in order to be legally sufficient.

Mo. Const. Art. XII, § 1 provides that the constitution may be revised and amended only as therein provided. Section 2(b) provides for amendments to the constitution by the initiative process. Mo. Const. Art. III, § 50 requires initiative petitions proposing laws to be signed by five percent of the legal voters in two-thirds of the congressional districts, and petitions proposing constitutional amendments to be signed by eight percent. Section 116.050, RSMo Supp.1983, requires that each page of an initiative petition shall be attached to or shall contain a full and correct text of the proposed measure. Section 116.120, RSMo Supp.1983, requires the Secretary to examine the petition to determine whether it complies with the Missouri Constitution and chapter 116. Section 116.150, RSMo Supp.1983, provides that after the Secretary determines the sufficiency of the petition, he must issue a certificate setting forth the number of valid signatures and stating whether the petition contains a sufficient number of valid signatures to comply with the constitution and chapter 116. Section 116.200, RSMo Supp.1983, states that after the Secretary certifies a petition as sufficient or insufficient, any citizen may apply to the circuit court of Cole County to compel him to reverse his decision.

1. The Project has expressed concern about the continued vitality of *Halliburton*. That subject was fully explored in *Moore* and the court concluded that *Halliburton* had not been overruled and continued to be good law. No case since *Moore* has overruled *Halliburton*.

The present initiative law is substantially the same as it was at the time of the *Halliburton* and *Moore* decisions. Under *Halliburton* and *Moore*, and indeed as required by Section 116.120, the Secretary is to examine the petition to determine if it complies with the constitution and chapter 116. This includes not only the question of whether or not there is a sufficient number of signatures, but also the question of procedural constitutionality. The latter requires the Secretary to examine the proposal contained in the petition to determine whether it in fact proposes a law or a constitutional amendment.

Section 5.1 of the Project's proposal states:

Section 5.1. After the effective date of this act, no part of the cost of any nuclear fission thermal powerplant may be added to the rate base of any electrical corporation, nor shall any part of such cost be otherwise recovered from the consumers, until conditions (a) and (b) have been met:

(a) The public service commission finds, after public hearing, that there has been developed and that the United States through its authorized agency or agencies has approved and there exists a demonstrated technology or means for the disposal of the high-level nuclear waste expected to be generated by the plant, and an acceptable geologic medium for such disposal. Such finding shall be subject to judicial review as proved in § 386.510, R.S.Mo.1978.

(b) The public service commission has reported its findings and the reasons therefor pursuant to condition (a) to the General Assembly. Such reports of findings shall be assigned to appropriate committees for review. The commission may proceed to permit the inclusion in the rate base of the allowable cost 100 legislative days after reporting its findings unless within those 100 legislative days either house of the General Assembly adopts a resolution disaffirming the findings of the commission made pursuant to condition (a).

A resolution of disaffirmance shall set forth the reasons for the action and shall provide, to the extent possible, guidance to the commission as to an appropriate method of bringing the commission's findings into conformance with condition (a).

If a disaffirming resolution is adopted, the commission shall reexamine its original findings consistent with matters raised in the resolution. On conclusion of its re-examination, the commission shall reduce its findings to writing with the reasons therefor and shall transmit them to the General Assembly.

If the findings are that the terms of condition (a) have been met, the commission may proceed to permit the inclusion in the rate base of such allowable cost 100 legislative days after reporting its findings to the General Assembly unless within those 100 legislative days both houses of the General Assembly act by statute to declare the findings null and void.

To allow sufficient time for the General Assembly to act, the reports of findings of the commission shall be submitted to the General Assembly at least six calendar months prior to the adjournment of the General Assembly sine die.

In summary, section 5.1 prohibits including any cost of a nuclear fission thermal powerplant in any electrical corporation's rate base unless both conditions (a) and (b) are met. Section 5.1(a) provides that the public service commission shall determine if there has been developed and the United States has approved, the existence of a demonstrated technology or means for the disposal of high-level nuclear waste, and an acceptable geologic method for such disposal. This sub-section provides for judicial review of the public service commission finding.

Subparagraph (b) provides that the public service commission shall report its findings and reasons made under subparagraph (a) to the General Assembly. It provides that either house of the General Assembly may adopt a resolution disaf-

firming the commission's findings. On the adoption of a disaffirming resolution, the commission is to reexamine its original findings consistent with the matters raised in the resolution. After concluding its reexamination, the commission shall make findings with the reasons therefor and again transmit them to the General Assembly.

If the public service commission finds that condition (a) has been met, both houses of the General Assembly may act by statute to declare the findings of the public service commission null and void.

Mo. Const. Art. V, § 18 provides that all final decisions of administrative bodies existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law. It is well settled that this constitutes a constitutional guarantee, rather than a statutory right, to judicial review of decisions of administrative bodies, including the public service commission. *State ex rel. Missouri Power & Light Co. v. Riley*, 546 S.W.2d 792, 797[7] (Mo.App.1977). Further, *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50, 52–53[1–7] (Mo.App.1975), held that the constitutional provision for judicial review is self-enforcing and requires no legislation to make it effective.

It is abundantly clear that under Mo. Const. Art. V, § 18, decisions of the public service commission are subject only to judicial, and not legislative, review. Although subparagraph (a) provides for judicial review of the public service commission's finding that a demonstrated technology or means for the disposal of nuclear waste has been developed, such review becomes meaningless in light of the provisions of (b), which provides for review of the public service commission's decision by the General Assembly, and provides for absolute reversal of the public service commission's decision by the passage of a statute by the General Assembly. It is plain that Section 5.1(b) provides for review of the public service commission decision on nuclear waste technology by the General Assembly, and gives to the General Assembly the absolute right to nullify the public service commission decision.

Section 5.1 clearly constitutes a departure from Mo. Const. Art. V, § 18, and such a change can only be made by amending that section to provide for review of certain administrative decisions by the General Assembly, rather than by judicial review. This follows from Mo. Const. Art. XII, § 1 and the fact that the constitution does not provide for its amendment by a law.

It is clear that under *Halliburton* and *Moore* the Secretary and the court had the duty to examine the Project's petition to determine whether or not it proposed a law or a constitutional amendment. The Project's argument that the Secretary and the court are bound by the language of the petition was forcefully answered in *Halliburton*. The court stated that the nature and character of the measure proposed in the petition must be determined by looking at the subject matter with which it deals, and held that merely calling a proposal an amendment to the constitution is not binding upon either the Secretary or the court. 230 Mo. at 435, 130 S.W. at 695. The same holds true in this case. Merely calling the proposal a law does not make it so when it would in fact amend the constitution in a manner not provided by the constitution.

The court correctly held that Proposition B constitutes an amendment to the constitution and not the proposal of a law. This resulted in the proposal being procedurally unconstitutional under *Moore*. The court correctly held that an amendment to the constitution proposed by the initiative requires the signatures of eight percent of the legal voters in two-thirds of the congressional districts. It is undisputed that the petition did not contain the signatures of eight percent of the legal voters in the required number of districts. Therefore, the court correctly reversed the Secretary's finding that the petition was sufficient.

Union Electric raises a number of other grounds on which the judgment may be

affirmed. It is not necessary to discuss or decide those issues.

Union Electric and Friel filed a cross-appeal to this court to make certain the appeal was lodged here. In view of the disposition of the jurisdictional question, that appeal is dismissed.

The judgment ordering the Secretary to remove Proposition B from the ballot is affirmed.

All concur.

_____

William E. Turnage, Chief Judge