

# SUPREME COURT OF MISSOURI
## en banc

JIM BOEVING, PATTY ARROWOOD, )     *Opinion issued September 20, 2016*
ROBERT E. PUND, and ROBERT A. )
KLEIN, )
)
Appellants, )
)
v. )     No. SC95924
)
MISSOURI SECRETARY OF STATE )
JASON KANDER, RAISE YOUR HAND )
FOR KIDS, and ERIN BROWER, )
)
Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

Appellants brought several challenges to the Secretary of State's August 9, 2016, decision certifying Amendment No. 3, a constitutional amendment proposed by initiative petition, for the November 8, 2016 general election ballot. The trial court rejected some of these challenges on their merits and determined that the remainder were premature. This Court has jurisdiction pursuant to article V, section 3, of the Missouri Constitution, and the trial court's judgment is affirmed.

**Background**

This appeal arises from three separate cases brought pursuant to section 116.200.1[1] by various individuals challenging the Secretary of State's August 9, 2016, decision certifying Amendment No. 3 for the November 8, 2016, general election ballot. All three cases were heard in the trial court on a common record and resolved in a common judgment. The trial court's findings of fact include the following.

**I.     Amendment No. 3**

In 2015, Raise Your Hand For Kids, Inc., a Missouri non-profit corporation and campaign committee ("RYH4K"), and Ms. Brower, one of its directors (collectively, "Proponents") sought to amend article IV of the Missouri Constitution by adding a new section 54 and subsections 54(a)-(c). Proponents' counsel submitted an initiative petition sample sheet containing the full text of the proposed constitutional amendment ("Amendment No. 3")[2] to the Secretary of State on November 20, 2015.

Following the statutory procedures for preparing an official ballot title, the Secretary: (1) drafted the summary statement portion of the ballot title, § 116.160, and (2) forwarded Amendment No. 3 to the State Auditor for preparation of the fiscal note and drafting of the fiscal note summary portion of the ballot title, § 116.175. On January 5, 2016, the Secretary certified the combination of his summary statement and the

---

[1]   All statutory references are to RSMo 2000, except section 116.175, RSMo Cum. Supp. 2013, and section 116.190, RSMo Noncum. Supp. 2015.

[2]   Originally, the Secretary designated Proponent's initiative petition as IP 2016-152. The designation "Amendment No. 3" was not assigned until the signatures were submitted and the Secretary certified it for the ballot. § 116.210. For ease of reference, however, all references to Proponents' proposal are made using the designation "Amendment No. 3."

2

Auditor's fiscal note summary as the official ballot title. § 116.180. As required by section 116.180, Proponents affixed this official ballot title to their initiative petition, printed numerous copies, and began gathering signatures.

On May 7, 2016, Proponents submitted to the Secretary of State more than 330,000 signatures in support of Amendment No. 3. Each of the signature pages contained the full text of Amendment No. 3 and the official ballot title certified by the Secretary of State on January 5. Following verification by local election authorities, the Secretary of State determined that Proponents had submitted a sufficient number of valid signatures to meet the constitutional threshold for constitutional amendments by initiative petition, i.e., more than eight percent of the legal voters (based on the number of votes in the last gubernatorial election) in six of Missouri's eight congressional districts. Accordingly, on August 9, 2016, the Secretary of State issued a Certificate of Sufficiency stating Amendment No. 3 would be placed before the voters on the November 8, 2016, general election ballot.

## II. Ballot title litigation

On January 15, 2016, Mr. Boeving challenged the official ballot title that had been certified by the Secretary of State on January 5, 2016. He filed this "Ballot Title Litigation" pursuant to section 116.190. Because Mr. Boeving challenged both portions of the ballot title, i.e., the summary statement and the fiscal summary, he named both the Secretary of State and the State Auditor as defendants. § 116.190.2. Proponents sought (and were granted) intervention in the Ballot Title Litigation. On May 19, 2016, after Proponents had gathered all of the signatures in support of Amendment No. 3 and

3

submitted them to the Secretary of State, the trial court entered judgment in this Ballot Title Litigation. It rejected Mr. Boeving's challenge to the summary statement portion of the ballot title but determined that the fiscal note summary portion of the ballot title was "unfair and insufficient" under section 116.190.3.

The Auditor and Proponents appealed the portion of the trial court's judgment pertaining to the fiscal note summary, and Mr. Boeving cross-appealed the trial court's denial of his challenge to the summary statement. The court of appeals reversed the judgment. It held that the fiscal note summary portion of the ballot title was "fair and sufficient" but held that the summary statement portion of the ballot was "unfair and insufficient." *Boeving v. Kander*, ___ S.W.3d ___, ___ (Mo. App. July 8, 2016) (Case No. WD79694). As a result, it certified "the following [corrected] summary statement language to the Secretary of State, for inclusion in the official ballot title for the initiative petition …." *Id.* This Court denied transfer, *see* Case No. SC95802 (July 14, 2016), and the court of appeals issued its mandate on July 15, 2016. On July 18, 2016, pursuant to section 116.190.4, the Secretary of State certified the new ballot title with the changes ordered by the court of appeals.

The ballot title certified by the Secretary of State on July 18 was not included on the initiative petitions that Proponents had circulated for signatures. This is because the signature gathering process had been completed – and the signed petitions submitted to the Secretary of State – on May 7, long before the court of appeals issued its mandate on July 15 or the Secretary of State certified the revised ballot title on July 18. Instead, all of

4

the signatures were gathered and submitted to the Secretary of State using petitions bearing the ballot title certified by the Secretary of State on January 5, 2016.

## III.    The present litigation

On August 9, 2016, the Secretary of State certified that Proponents had submitted sufficient valid signatures to have Amendment No. 3 put before Missouri voters on the November 8, 2016, general election ballot.  In response, Mr. Boeving, Ms. Arrowood, and Messrs. Pund and Klein filed three separate lawsuits seeking to compel the Secretary to reverse this decision.  § 116.200.1.  For ease of analysis, the challengers' claims are aggregated and the challengers are referred to collectively as "Opponents."

Opponents first claimed that the Secretary should not have counted any of the signatures gathered and submitted by Proponents because those signatures were gathered and submitted using the official ballot title certified by the Secretary on January 5, 2016, without the changes ordered by the court of appeals on July 15, 2016.  Second, they claimed that Amendment No. 3 violates article III, section 50, of the Missouri Constitution, which states in pertinent part: "Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith[.]"  Third, Opponents claimed that Amendment No. 3 violates the first clause of the first sentence of article III, section 51, of the Missouri Constitution, which states that the "initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby …."  Finally, Opponents claimed that Amendment No. 3 violates the second clause of the first sentence of article III, section

5

51, which states that the "initiative shall not be used … for any other purpose prohibited by this constitution," in that the operation and effect of Amendment No. 3 (if approved and implemented) could violate various preexisting provisions of the Missouri Constitution.

Proponents intervened and, together with the Secretary, defended the August 9 certification of Amendment No. 3 against Opponents' challenges. With respect to Opponents' first claim, the Secretary and Proponents argued that the applicable sections of chapter 116 do not require the Secretary to reject Proponents' signatures merely because of a court-ordered change to the official ballot title that occurred *after* the signatures were gathered and submitted. In addition, Proponents claimed that – to the extent one or more statutes in chapter 116 are construed to require the Secretary to reject the signatures gathered and submitted by Proponents – those provisions are unconstitutional because they infringe upon Proponents' rights to propose constitutional amendments by initiative petition under article III, section 49, of the Missouri Constitution.

The trial court did not formally consolidate Opponents' cases, but all three cases were heard at the same time, on a common record, and were resolved in a common judgment. The trial court rejected Opponents' first claim and determined that the Secretary properly found Proponents had submitted a sufficient number of valid signatures to qualify for the ballot under article III, section 50. It also rejected Opponents' second claim and determined that Amendment No. 3 did not violate the "single article" or "single subject" requirements in article III, section 50. Finally, the

6

trial court determined that Opponents' third and fourth claims were premature and could be raised only if – and after – Missouri voters approved Amendment No. 3 in the 2016 general election. Because the trial court determined that the applicable statutes in chapter 116 do not require the Secretary to reject the signatures gathered and submitted by Proponents, it had no occasion to address Proponents' alternative constitutional claims.

Opponents timely appealed the trial court's judgment to the court of appeals. The court of appeals formally consolidated the appeals and, on September 8, 2016, transferred the matter to this Court on the basis that article V, section 3, of the Missouri Constitution gives this Court exclusive appellate jurisdiction over Opponents' appeal.

**Analysis**

**I.      This Court has exclusive appellate jurisdiction**

Opponents did not assert any claims in the trial court that, on appeal, fall within this Court's exclusive jurisdiction, and the Secretary did not raise any such claims in defending Opponents' challenges. Proponents, however, did raise such a claim. They argued that if – but only if – the Opponents are correct (i.e., that one or more statutory provisions in chapter 116 require the Secretary not to count the signatures Proponents had gathered and submitted), then whichever provisions in chapter 116 mandate such a result are unenforceable because they are an unconstitutional infringement of Proponents' right to propose constitutional amendments by initiative petition.

The trial court never reached Proponents' fallback, constitutional claim because it determined that chapter 116 does not contain any statutory provisions requiring the

7

Secretary to reject the signatures gathered and submitted by Proponents. By the same token, the court of appeals may well have affirmed – and this Court does affirm – the trial court's judgment solely as a matter of statutory construction without reaching Proponents' alternative, constitutional claim. But, "[e]xclusive appellate jurisdiction of a case cannot depend upon how certain issues of that case are decided, with appellate jurisdiction in this court if decided one way but jurisdiction in the court of appeals if decided the other way." *State ex rel. State Highway Comm'n v. Wiggins*, 454 S.W.2d 899, 902 (Mo. banc 1970). Instead, where any party properly raises and preserves in the trial court a real and substantial (as opposed to merely colorable) claim that a statute is unconstitutional, this Court has exclusive appellate jurisdiction over any appeal in which that claim may need to be resolved. "Once the case properly invokes this Court's jurisdiction, the ultimate determination that the constitutional issue is not meritorious or that the merits of the constitutional issue should not be addressed does not retroactively deprive this Court of jurisdiction." *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 270 (Mo. banc 2014).

Here, if the appellate court agreed with Opponents' claim that – properly construed – one or more of sections 116.190.4, 116.180, and 116.120.1 require the Secretary to reject the signatures submitted by Proponents, then that court necessarily would have to address Proponents' real and substantial claim that these statutes (so construed) are unconstitutional on a claim Proponents properly raised and preserved in the trial court. As a result of that possibility, exclusive appellate jurisdiction over Opponents' appeal rests with this Court. The fact that this Court does not need to

8

reach the merits of Proponents' constitutional claim in order to resolve Opponents'

appeal does not change the analysis or give the court of appeals appellate jurisdiction.[3]

## II. Proponents submitted a sufficient number of valid signatures

Opponents do not challenge the validity of any particular signatures. Instead,

Opponents claim that, in determining whether Proponents submitted a sufficient number

of valid signatures in support of Amendment No. 3 to qualify for the ballot under article

III, section 50, the Secretary was required to count only those signatures that were

gathered and submitted on petition pages bearing the official ballot title after the court of

appeals had ordered changes to that title on July 15 and the Secretary had certified a new

title with the court-ordered changes on July 18. In other words, because Proponents had

---

[3] Even though Proponents prevailed in the trial court, they sought to appeal the trial court's refusal to reach the merits of their constitutional claim to this Court. This Court dismissed Proponents' appeals, not because they were not within this Court's exclusive appellate jurisdiction (in which case the Court would have transferred the cases to the court of appeals), but because Proponents had no right to appeal under section 512.020 in that Proponents were not "aggrieved" by the trial court's final judgment. Proponents asserted their constitutional claim only in the event that the trial court adopted the construction of sections 116.190.4, 116.180, and 116.120.1 that Opponents advocated. But, because it expressly rejected that construction, the trial court never reached Proponents' alternative, constitutional claim. Under section 512.020, therefore, Proponents cannot appeal from a judgment that decided no issue against them. This does not mean, however, that Proponents cannot assert their constitutional claim in their role as respondents in Opponents' appeal. Like any respondent, Proponents are entitled to assert alternative grounds on which to affirm the trial court's judgement. *See Rouner v. Wise*, 446 S.W.3d 242, 249 (Mo. banc 2014) (appellate courts are "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result") (citing *Business Men's Assur. Co. of Am. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999)); *American Eagle Waste Indus., LLC v. St. Louis County,* 379 S.W.3d 813, 829 (Mo. banc 2012) (judgment must be "affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient"). Proponents' constitutional claim is of this nature and, as explained above, the mere possibility that this claim may need to be addressed in order to resolve Opponents' appeal is sufficient to give this Court exclusive jurisdiction over that appeal *regardless* of whether this Court ultimately finds it necessary to reach Proponents' constitutional claim in order to resolve Opponents' appeal.

9

gathered and submitted all of their signatures on May 7 (one day before the May 8 constitutional deadline for submitting signed petitions), Opponents claim that none of the signatures gathered and submitted by Proponents were valid and the Secretary was bound to reject them all.

In support of this argument, Opponents rely on three statutes. First, if a lawsuit is filed pursuant to section 116.190 to challenge the official ballot title certified by the Secretary of State and that challenge results (after final judgment and all appeals) in court-ordered changes to the official ballot title, section 116.190.4 provides: "In making the legal notice to election authorities under section 116.240, and for the purposes of section 116.180, the secretary of state shall certify the language which the court certifies to him." Second, section 116.180, which is referred to in section 116.190.4, provides:

> Within three days after receiving the official summary statement the approved fiscal note summary and the fiscal note relating to any statewide ballot measure, the secretary of state shall certify the official ballot title in separate paragraphs with the fiscal note summary immediately following the summary statement of the measure and shall deliver a copy of the official ballot title and the fiscal note … to the person [i.e., proponent] whose name and address are designated under section 116.332. Persons circulating the petition shall affix the official ballot title to each page of the petition prior to circulation and signatures shall not be counted if the official ballot title is not affixed to the page containing such signatures.

§ 116.180. Finally, section 116.120 provides:

> When an initiative or referendum petition is submitted to the secretary of state, he or she shall examine the petition to determine whether it complies with the Constitution of Missouri and with this chapter. Signatures on petition pages that have been collected by any person who is not properly registered with the secretary of state as a circulator shall not be counted as

10

valid. Signatures on petition pages that do not have the official ballot title affixed to the page shall not be counted as valid.

§ 116.120.1.

Opponents argue that, in all cases in which a court orders changes to the official ballot title under section 116.190.4, the phrase "official ballot title" as used in sections 116.180 and 116.120.1 means *only* the last title certified by the Secretary, i.e., the one the Secretary certifies pursuant to section 116.190.4. As a result, Opponents contend that – even though Proponents "affixed" the official ballot title for Amendment No. 3 that the Secretary certified and delivered to them on January 5, 2016, to each of their petition pages before circulating them for signature and submitting them to the Secretary on May 7, 2016 – the Secretary cannot count any of those signatures because he certified a different official ballot title for Amendment No. 3 on July 18, 2016, as a result of the mandate from the court of appeals under section 116.190.4.

The Court rejects Opponents' argument and holds that there is no clear and unequivocal requirement in sections 116.190.4, 116.180, or 116.120.1 (or elsewhere in chapter 116) prohibiting the Secretary from counting the signatures Proponents gathered and submitted to him on May 7. In the absence of such a clear and unequivocal requirement, the Court has no occasion to consider whether the effect of such a requirement on Proponents – who bear no fault for the flaw in the January 5 official ballot title identified by the court of appeals on July 15 – unconstitutionally burdens Proponents' right to seek to amend the Missouri Constitution using the initiative petition

11

process specifically reserved to the people of this state in article III, section 49, of the Missouri Constitution.

The Court's holding is compelled by the facts of this case and the language of the applicable statutes. On January 5, 2016, the Secretary fully complied with his obligations under section 116.180 when he certified and delivered the official ballot title for Amendment No. 3 to the Proponents. Proponents then fully complied with their obligations under section 116.180 when they "affixed" this official ballot title to each page of their petition before circulating it for signatures. On May 7, 2016, when Proponents submitted their signed petition to the Secretary, all of the signed petition pages displayed the only official ballot title for Amendment No. 3 that the Secretary had ever certified – and that Proponents had ever received – up to that date. Even though Mr. Boeving initiated the Ballot Title Litigation on January 15, 2016, the trial court did not enter judgment calling for changes to the official ballot title until May 19, nearly two weeks after Proponents submitted their signed petition to the Secretary, and the ultimate judgment in the Ballot Title Litigation (i.e., the mandate from the court of appeals) ordering the Secretary to make changes to the official ballot title did not issue until July 15, more than two months after Proponents submitted their petition to the Secretary.

When the Secretary received the mandate from the court of appeals, he fully complied with his obligation under section 116.190.4 on July 18 when he certified the new, court-ordered official ballot title to local election authorities and delivered it to Proponents. When Proponents received the new official ballot title from the Secretary on July 18, however, nothing in sections 116.180 or 116.120.1 required them to start over,

12

i.e., to reaffix this new ballot title to their petition pages, recirculate those petition pages for signature, and then resubmit the regathered signatures to the Secretary. Nor is there anything in sections 116.180 or 116.120.1 that requires the Secretary to have rejected otherwise valid signatures on Proponents' petition pages when those pages complied with sections 116.180 or 116.120.1 at the time they were circulated and at the time they were signed.

For this Court to find that chapter 116 intends the harsh result advocated by Opponents, there would need to be statutory language plainly and unambiguously stating that a court-ordered change to the official ballot title under section 116.190.4 necessarily invalidates all signatures gathered before that court-ordered change occurs regardless of the fact that those signatures were gathered on petition pages that properly displayed what was (at that time) the official ballot title as certified by the Secretary. No such plain and unambiguous language appears in sections 116.190.4, 116.180, and 116.120.1 (or any other provisions of chapter 116). Instead, the clear import of these statutes is that the "official ballot title" refers to the title originally certified by the Secretary pursuant section 116.180 unless and until the Secretary certifies a different title under section 116.190.4. At any given point in time, however, there is only one "official ballot title."

Sections 116.180 and 116.120.1 require the proponents of a constitutional amendment to place the "official ballot title" on their petition pages before circulation and signatures, but this means the "official ballot title" at the time of circulation and signature. Both section 116.180 and 116.120.1 state that a failure to comply with this requirement will invalidate the signatures gathered. But neither statute (nor any other in

13

chapter 116) purports to invalidate signatures already gathered and submitted to the Secretary in full compliance with these requirements when the Secretary *later* certifies a different ballot title in compliance with a court order under section 116.190.4.

The courts of this state must zealously guard the power of the initiative petition process that the people expressly reserved to themselves in article III, section 49. To that end, "[c]onstitutional and statutory provisions relative to initiative are liberally construed to make effective the people's reservation of that power." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990). Accordingly, in the absence of any clear and unambiguous statutory requirement invalidating signatures gathered on petition pages that displayed the only "official ballot title" the Secretary had certified and delivered to the petition's proponents at the time those pages were circulated and signed solely because the Secretary later certified a different "official ballot title," the Court will not infer such a requirement. Having refused to construe these (or any other) statutes to impose that requirement, the Court does not need to address whether such a requirement would be unconstitutional as described in *Blunt*, 799 S.W.2d at 827 ("Statutes that place impediments on the initiative power that are inconsistent with the reservation found in the language of the constitution will be declared unconstitutional.").

Opponents argue that the purpose of sections 116.190.4, 116.180, and 116.120.1 is to ensure that a proposed constitutional amendment is not represented on the initiative petition by one official ballot title and on the ballot by a different official ballot title, particularly where the former was replaced by the latter because it was judicially determined to be "unfair and insufficient" under section 116.190.1. But Opponents'

14

assertion is not supported by the language of these statutes or the constitutional provisions they purport to implement. As discussed above, there is no statutory language explicitly compelling this result, and the Court will not infer such a requirement. More importantly, Opponents' argument runs counter to the language of the constitutional provisions that expressly reserve the power of the initiative petition process to the people.

There is a clear requirement that constitutional amendments proposed by initiative petition must be identified by "official ballot title" when put before the voters. *See* Mo. Const. art. XII, sec. 2(b) ("All amendments proposed by the general assembly or by the initiative shall be submitted to the electors for their approval or rejection by official ballot title as may be provided by law, on a separate ballot without party designation …."). But this provision *only* authorizes legislation detailing the requirement for an "official ballot title" at the time the proposed constitutional amendment is put before the voters. There is no similar express constitutional authorization for statutes to impose a requirement that an "official ballot title" – or a title of any sort – must be displayed on the pages of initiative petitions proposing constitutional amendments before they may be circulated for signatures.

The requirements for initiative petitions proposing constitutional amendments are set forth in article III, section 50, and this provision does not require that the initiative petition carry an "official ballot title" or a "title" of any sort. Instead, it provides only that an initiative petition proposing a constitutional amendment "shall contain … the full text of the measure" and that it must have an "enacting clause" in the following form: "Be it resolved by the people of the state of Missouri that the Constitution be amended:"

15

Mo. Const. art. III, sec. 50. Any concerns the framers may have had concerning providing potential signers with accurate information would have been satisfied fully by these requirements, and the lack of a title requirement may well have been intended to avoid burdening potential signers with redundant (or, worse, misleading) information. This omission of a title requirement for initiative petitions proposing constitutional amendments is even more striking in light of the express constitutional requirement for a "title" on those initiative petitions that propose statutory (rather than constitutional) amendments. *See* Mo. Const. art. III, sec. 50 ("Petitions for laws shall contain not more than one subject which shall be expressed clearly *in the title*, and the enacting clause thereof") (emphasis added).

Proponents do not claim that sections 116.180 and 116.120.1 are unconstitutional because they required Proponents to "affix" an "official ballot title" authored by executive branch officials to their initiative petition prior to circulating it for signatures. Instead, they claim that these statutes are unconstitutional if – but only if – they are construed to require the Secretary to reject the signatures due to a court-ordered change to the official ballot title that occurred after Proponents had gathered and submitted their signatures. Because the Court rejects any such construction, the Court has no occasion to address Proponents' constitutional claim.

III. **Amendment No. 3 does not, on its face, amend or create more than one article of the Missouri Constitution**

In the trial court, Opponents argued that the Secretary should not have certified Amendment No. 3 for the ballot because it contains more than one subject and because it

16

amends or creates more than one article of the Missouri Constitution. The trial court rejected both contentions. On appeal, Opponents have abandoned the multiple subject challenge[4] and now maintain only that Amendment No. 3 amends or creates more than one article of the Missouri Constitution. The trial court's decision on this issue is affirmed.

Article III, section 50, provides in pertinent part: "Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith." *See also* Mo. Const. art. XII, sec. 2(b) (same). Opponents concede that, on its face, Amendment No. 3 complies with this "single article" requirement. It purports to amend only article IV by creating a new section 54 and new subsections 54(a)-(c). In this appeal, however, Opponents contend that Amendment No. 3 "amends by implication" the following provisions of the state constitution: (a) those portions of article IX, section 8, and article 1, section 7, regarding the expenditure of state money for religious purposes; and (b) those portions of article X, sections 1 and 2, which give the power of taxation only to the general assembly or political subdivision to which it delegates that power. Of these arguments on appeal, this Court need address only Opponents' argument that Amendment No. 3 "amends by implication" article IX,

---

[4] *See Comm. For A Healthy Future, Inc. v. Carnahan,* 201 S.W.3d 503, 511 n. 7 (Mo. banc 2006) (contentions not set forth in points relied on are considered abandoned).

section 8, because that is the only argument Opponents properly raised and preserved in the trial court.[5]

Opponents argument that Amendment No. 3 "amends by implication" article IX, section 8, is based on section 54(b)(2) of Amendment No. 3, which states: "Distributions of funds under this amendment shall not be limited or prohibited by the provisions of article IX, section 8." Article IX, section 8, provides:

> Neither the general assembly, nor any county, city, town, township, school district or other municipal corporation, shall ever make an appropriation or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose, or to help to support or sustain any private or public school, academy, seminary, college, university, or other institution of learning controlled by any religious creed, church or sectarian denomination whatever; nor shall any grant or donation of personal property or real estate ever be made by the state, or any county, city, town, or other municipal corporation, for any religious creed, church, or sectarian purpose whatever.

This Court has been unwilling in the past to construe the constitutional provisions reserving to the people the power to propose constitutional amendments to impose any requirement that a measure's proponents identify every provision of the existing constitution that the proposed amendment might conceivably alter or affect if and when the proposed amendment is approved by the voters and put into operation. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. 1981) ("*Moore* does not require the makers of an

---

[5]  *See Mayes*, 430 S.W.3d at 266 ("To raise a constitutional challenge properly, the party must: '(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.'") (quoting *United C.O.D. v. State,* 150 S.W.3d 311, 313 (Mo. banc 2004)).

initiative petition to "ferret out" and to list all the provisions which could possibly or by implication be modified by the proposed amendment.") (citing *Moore v. Brown*, 165 S.W.2d 657, 663 (Mo. banc 1942)).  Nor is this Court willing to construe article III, section 50, to prohibit voters from approving or rejecting a constitutional amendment proposed by initiative petition simply because the proposed amendment may (if and when it goes into operation) be construed to alter or affect the application of a preexisting constitutional provision.  By its terms, article III, section 50 is concerned only with what a proposed constitutional amendment "contains," not with what a proposed constitutional amendment will or might do if the voters approve it.

Moreover, there is no need in the present case to refine any further the meaning of the "one article" limitation in article III, section 50.  By its terms, article IX, section 8, prohibits the payment of public funds for certain purposes by "the general assembly, []or any county, city, town, township, school district or other municipal corporation[.]" Amendment No. 3, on the other hand, creates a new constitutional entity (i.e., the "Early Childhood Commission") and authorizes it to make grants of public funds to various entities for various purposes.  The fact that Amendment No. 3 notes that the restrictions in article IX, section 8, will not apply to this Commission's activities does not purport to – and does not necessarily have the effect of – amending article IX, section 8.  *Cf. Payne v. Kirkpatrick*, 685 S.W.2d 891, 903 (Mo. App. 1984) ("It does not follow that such prohibitions [on spending by the general assembly], as found within § 39, applies to initiative petitions, particularly in light of the language [reserving the power to propose constitutional amendments by initiative petition] contained within § 49 of Article III").

19

Accordingly, Amendment No. 3 does not "contain more than one amended and revised article of this constitution, or one new article" as prohibited by article III, section 50.

## IV. Amendment No. 3 does not violate the prohibition against appropriation by initiative in article III, section 51

Opponents argue that Amendment No. 3 violates the provision in article III, section 51, which states that the "initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby[.]" Such an argument goes to what Amendment No. 3 will or may do if approved by the voters and put into operation, not to whether Amendment No. 3 is properly put before the voters at all. As discussed below, such challenges to the effect of a proposed amendment if enacted rather than to the sufficiency of the initiative petition process are premature, burdensome to those who seek to avail themselves of the power of initiative process reserved to the people in article III, section 49, and better addressed in the context of actual (rather than hypothetical) application.

This Court, however, has entertained "appropriation by initiative" claims in pre-election litigation.[6] *See, e.g., Comm. For A Healthy Future, Inc. v. Carnahan*, 201

---

[6] Successful challenges have been limited almost exclusively to initiative petitions proposing local ordinances where the evident purpose and effect of the proposal was to impose a new obligation leaving no discretion as to whether the local governments would or could pay this new obligation and no new source of revenue sufficient to do so. *See, e.g., Kansas City v. McGee*, 269 S.W.2d 662, 665 (1954) ("proposed ordinance is, in effect, an appropriation ordinance but does not create nor provide for any revenues"); *Sate ex rel. Card v. Kaufman*, 517 S.W.2d 78, 80 (Mo. 1974) ("By its plain intendment it requires the budget official to include the specified compensation in the budget, and requires the city council to approve it, regardless of any other financial considerations …. There is no pretense that it creates or provides new revenues with which to fund the additional cost to the city."). As a result, these cases met the "irreconcilable conflict" standard for pre-election review later articulated by this Court in *Healthy Future*, 201 S.W.3d at 510.

S.W.3d 503, 510 (Mo. banc 2006) (rejecting claim and noting Court was bound to adopt "interpretation [that] harmonizes the provisions of section 12 of the initiative and article III, section 51 of the state constitution rather than creating an irreconcilable conflict"); *Buchanan*, 615 S.W.2d at 15 ("We find no merit in the allegation that Amendment No. 5 appropriates in contravention of the Constitution.").[7] There is no reason for this Court to reexamine the law in these cases regarding their authorization of pre-election challenges based on article III, section 51, however, as Opponents' claims lack merit substantially for the reasons set forth in *Healthy Future*.

Opponents do not claim that the language of Amendment No. 3 creates the sort of unavoidable and irreconcilable conflict with article III, section 51, referred to in *Healthy Future* by seeking expressly to appropriate funds other than those that are raised by the taxes the amendment would impose. Instead, assuming that Amendment No. 3 is approved by the voters and put into effect, Opponents argue that the language of Amendment No. 3 would do so only to a very limited – and perhaps inadvertent – extent. They point to the fact that, if and when Amendment No. 3 goes into effect, funds presently held in the "Coordinating Board for Early Childhood Fund" will be incorporated into the "Early Childhood Health and Education Trust Fund" created in Amendment No. 3. Those funds (plus all new funds generated by Amendment No. 3)

---

[7] It should be noted that cases such as *City of Kansas City, Missouri v. Chastain*, 420 S.W.3d 550 (Mo. banc 2014), are of a different stripe. Where a government official relies on a supposed "appropriation by initiative" violation (or any other claim aimed at the substance of a proposal) as the reason to keep an otherwise sufficient initiative petition proposal off the ballot, courts must entertain actions by the proponents of the proposal seeking to compel access to the ballot or leave such proponents remediless.

then will be disbursed according to the procedures set forth in Amendment No. 3. As far as the record discloses, however, not only was this preexisting fund never linked to any particular source of revenue, it never held *any* funds (through legislative appropriation or otherwise) until April 2016, when a single individual "donated" $100 to this fund.

Such maneuverings aside, the salient point in this pre-election contest is that there is nothing on the face of Amendment No. 3 that clearly and unavoidably purports to appropriate previously existing funds (as opposed to those that may be generated by the amendment itself). Accordingly, under *Healthy Future*, Amendment No. 3 does not violate article III, section 51. If Amendment No. 3 is approved by the voters and this "donor" believes that an imminent application of the provisions of Amendment No. 3 will result in the expenditure of his or her $100 without legislative appropriation, he or she should raise this challenge at that time, and, if it succeeds, it is likely that a remedy can be fashioned that is far more narrowly tailored than the wholesale rejection Opponents seek here.

## V. The remainder of Opponents' substantive challenges are premature

Finally, Opponents claim that Amendment No. 3 violates the second clause of the first sentence of article III, section 51, which states that the "initiative shall not be used … for any other purpose prohibited by this constitution." They contend that – if Amendment No. 3 is approved by the voters and put into effect – it authorizes or requires actions that are not permitted under various provisions of Missouri's preexisting Constitution and, therefore, violates this provision of article III, section 51.

22

All of these challenges, by definition, relate to what Amendment No. 3 will (or even might) do if approved by the voters and put into operation, not whether Amendment No. 3 satisfies the constitutional requirements to be put before the voters in the first instance. Challenges to whether the effect of a proposed constitutional amendment (if approved) will or might violate some limitation on the people's use of the initiative process imposed by the Missouri Constitution (or a substantive restriction imposed by the federal constitution) are premature unless and until the amendment has been approved by the voters and taken effect. "To avoid encroachment on the people's constitutional authority, courts will not sit in judgment on the wisdom or folly of the initiative proposal presented, *nor will this Court issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution*." *Brown v. Carnahan*, 370 S.W.3d 637, 645 (Mo. banc 2012) (emphasis added). Instead, our "single function [prior to the election] is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo. banc 1997) (quoting *Blunt*, 799 S.W.2d at 827). *See also Buchanan, 615 S.W.2d at 12* (noting "that at no place in either the Missouri Constitution or in the implementing statutes is any court granted the power to enjoin an amendment from being placed on the ballot upon the ground that it would be

23

unconstitutional if passed and adopted by the voters.") (citing *Moore*, 165 S.W.2d at 660).[8]

Article III, section 50, sets forth the requirements for the form of initiative petitions proposing constitutional amendments or statutory enactments, the "single article" limitation on the text of proposed constitutional amendments, the "single subject" limitation on the text of proposed statutory enactments, and the signature requirements and filing deadlines for both types of initiative petitions. Challenges based on those requirements may be asserted prior to the election. *Blunt*, 799 S.W.2d at 828 (rejecting

---

[8] Constitutional challenges to the operation and effect of statutory or constitutional provisions proposed through the initiative process are matters of such gravity and import that they are ill-suited to expedited, hypothetical-laced litigation under section 116.200.1. This Court should no more presume that the people will pass an unconstitutional measure than that their general assembly would do so but, where such issues arise with respect to a law enacted by the general assembly, they are given the full benefit and careful consideration that strict enforcement of issues such as ripeness and standing can produce, and only after (and if) it is enacted. Measures enacted through the initiative process deserve no less. To do otherwise is to "sacrifice the democratic process to the interest of judicial economy." *State ex rel. Dahl v. Lange*, 661 S.W.2d 7, 8 (Mo. banc 1983) (refusing to review pre-election constitutional challenges because doing so "could effectively enjoin the amendment from being placed on the ballot because of conjecture that it would be found unconstitutional if passed and adopted by the voters"). To be sure, this Court has crossed this line and entertained a pre-election challenge to the substantive effect of an ordinance proposed by initiative petition at least once in the past. *See State ex rel. Cranfill v. Smith*, 48 S.W.2d 891, 894 (Mo. banc 1932) ("the ordinance, if adopted, would be unconstitutional and of no force or effect, because the condemnation of the company's property in such manner would result in depriving the company of its property without due process of law. Section 1, Amendment 14, Const. of U. S.; section 30, art. 2, Const. of Mo."). And, in more recent cases, this Court occasionally has suggested that it would entertain a pre-election constitutional challenge based on the hypothetical application of a measure proposed by initiative petition if the issue of law raised is "so clear or settled as to constitute matters of form." *Craighead v. City of Jefferson*, 898 S.W.2d 543, 545 (Mo. banc 1995). But this approach baits far more hooks than it catches fish and, in so doing, it forces litigants and courts to give hurried treatment to serious issues that merit thorough review regardless of how clear they may seem in the abstract. In light of the expedited procedures required by section 116.200, *Brown* clearly steers the better path by elevating the initiative process, which the people of this state have reserved to themselves in article III, section 49, of the Missouri Constitution, above the mere possibility that pre-election consideration of such issues will better serve judicial economy.

24

the argument that "courts of this state lack authority to conduct a pre-election examination of an initiative petition to determine whether it complies with the provisions of article III, § 50."). To the extent such challenges have been raised by Opponents, this Court has reviewed and rejected them.

In addition, even though a pre-election challenge to an initiative proposal based on the "appropriation by initiative" prohibition in article III, section 51, decidedly is a substantive rather than procedural attack, this Court will entertain such challenges only to the extent that such a purpose and effect are plainly and unavoidably stated in the language of the proposal. *Healthy Future*, 201 S.W.3d at 510. For the reasons stated above, however, Opponents' "appropriation by initiative" claim falls far short of this standard.

But the remainder of Opponents' claims have nothing to do with ensuring that the constitutional prerequisites to the people's reserved power to propose constitutional amendments by initiative petition have been followed with respect to Amendment No. 3. Instead, they focus solely on whether Amendment No. 3 – if and when it is approved by the voters and put into effect – will (or might) violate various preexisting prohibitions in the Missouri Constitution. There will be time enough for such claims after the election, if Missouri voters find Amendment No. 3 to their liking.

## Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.

_____
Paul C. Wilson, Judge

Breckenridge, C.J., Fischer, Draper, Teitelman and Russell, JJ.,
and Dowd, Sp.J., concur. Stith, J., not participating.