

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

JEREMY CADY and RYAN JOHNSON, )
)
Appellants, )
v. )
)
) **WD83823**
MISSOURI SECRETARY OF STATE ) **(Consolidated with WD83824)**
JOHN ASHCROFT, )
) **OPINION FILED:**
Respondent, ) **June 8, 2020**
and )
)
HEIDI MILLER and LAURA DOMINIK, )
)
Intervenor-Respondents. )

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Daniel R. Green, Judge**

**Before Special Division:** Mark D. Pfeiffer, Presiding Judge, and
Anthony Rex Gabbert and W. Douglas Thomson, Judges

Jeremy Cady ("Cady") and Ryan Johnson ("Johnson") challenged Secretary of State John Ashcroft's ("Secretary of State") decision to certify as sufficient an initiative petition proposing a constitutional amendment, which would be placed on the ballot for the August 4, 2020 primary election. Cady and Johnson appeal from the judgment of the Circuit Court of Cole County, Missouri ("circuit court"), which found in favor of the Secretary of State and intervenor defendants. Finding no error, we affirm.

**Factual and Procedural Background**

On May 2, 2019, Dr. Heidi Miller ("Dr. Miller") submitted to the Secretary of State an initiative petition sample sheet, denominated by the Secretary of State as IP 2020-063, proposing to create a new section 36 within article IV of the Missouri Constitution, expanding access to Medicaid for certain Missouri citizens ("Proposed Measure"). The Proposed Measure proposed the following amendment:

> *Be it resolved by the people of the State of Missouri that the Constitution be amended:*
>
> Article IV of the Constitution is revised by adding one new section to be known as Article IV, Section 36(c) to read as follows:
>
> Section 36(c). 1. Notwithstanding any provision of law to the contrary, beginning July 1, 2021, individuals nineteen years of age or older and under sixty-five years of age who qualify for MO HealthNet services under 42 U.S.C. Section 1396a(a)(10)(A)(i)(VIII) and as set forth in 42 C.F.R. 435.119, and who have income at or below one hundred thirty-three percent of the federal poverty level plus five percent of the applicable family size as determined under 42 U.S.C. Section 1396a(c)(14) and as set forth in 42 C.F.R. 435.603, shall be eligible for medical assistance under MO HealthNet and shall receive coverage for the health benefits service package.
>
> 2. For purposes of this section, "health benefits service package" shall mean benefits covered by the MO HealthNet program as determined by the department of social services to meet the benchmark or benchmark-equivalent coverage requirement under 42 U.S.C. Section 1396a(k)(1) and any implementing regulations.
>
> 3. No later than March 1, 2021, the Department of Social Services and the MO HealthNet Division shall submit all state plan amendments necessary to implement this section to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services.
>
> 4. The Department of Social Services and the MO HealthNet Division shall take all actions necessary to maximize federal financial participation in funding medical assistance pursuant to this section.
>
> 5. No greater or additional burdens or restrictions on eligibility or enrollment standards, methodologies, or practices shall be imposed on persons eligible for MO HealthNet services pursuant to this section than on any other population eligible for medical assistance.

2

6. All references to federal or state statutes, regulations or rules in this section shall be to the version of those statutes, regulations or rules that existed on January 1, 2019.

On May 23, 2019, the Missouri State Auditor's Office prepared a Fiscal Note and Fiscal Note Summary for the Proposed Measure.[1] On June 13, 2019, the Secretary of State certified the official ballot title for the Proposed Measure. The official ballot title provides:

Do you want to amend the Missouri Constitution to:

- adopt Medicaid Expansion for persons 19 to 64 years old with an income level at or below 133% of the federal poverty level, as set forth in the Affordable Care Act;
- prohibit placing greater or additional burdens on eligibility or enrollment standards, methodologies or practices on persons covered under Medicaid Expansion than on any other population eligible for Medicaid; and
- require state agencies to take all actions necessary to maximize federal financial participation in funding medical assistance under Medicaid Expansion?

State government entities are estimated to have one-time costs of approximately $6.4 million and an unknown annual net fiscal impact by 2026 ranging from increased costs of at least $200 million to savings of $1 billion. Local governments expect costs to decrease by an unknown amount.

On May 22, 2020, the Secretary of State examined the Proposed Measure and the submitted signatures for compliance with Chapter 116[2] and certified the Proposed Measure.

Missouri's appropriations of money for expenses relating to Medicaid, among other programs, for Fiscal Year 2020 are contained in House Bills No. 10 and No. 11. Missouri's appropriations for expenses relating to Medicaid, among other programs, for Fiscal Year 2021, are contained in House Bills No. 2010 and No. 2011, and its supplemental appropriations for the same categories of expenses for Fiscal Year 2020 are contained in House Bill No. 2014.

---

[1] In preparing the Fiscal Note and Fiscal Note Summary, the Missouri State Auditor consulted a report commissioned by the Missouri Department of Social Services evaluating Missouri's Medicaid program. The report was titled "Rapid Response Review—Assessment of Missouri Medicaid Program" and was dated February 11, 2019.

[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

On May 26, 2020, Missouri Governor Michael L. Parson issued a proclamation pursuant to article XII, section 2(b), placing the Proposed Measure on the ballot for the August 4, 2020 primary election. Pursuant to article XII, section 2(b) and section 116.260, the Secretary of State is required to publish the full text of the Proposed Measure in local newspapers.

On May 22, 2020, a petition for declaratory judgment and injunctive relief was filed in the circuit court, against the Secretary of State under case number 20AC-CC00210. The plaintiff named in the petition was Johnson, "a Missouri citizen and taxpayer." Four days later, on May 26, 2020, a second petition for declaratory and injunctive relief was filed in the circuit court against the Secretary of State under case number 20AC-CC00209. The plaintiff named in the second petition was Cady, "a citizen, taxpayer, and registered voter of the state of Missouri." Both petitions were filed pursuant to section 116.200.1, which permits any citizen to apply to the Circuit Court of Cole County to compel the Secretary of State to reverse his decision to certify an initiative petition as sufficient or insufficient to be included on the ballot. On May 28, 2020, the circuit court entered a stipulated order consolidating the two cases.

The Petition[3] alleged two counts. Count I alleged that the Proposed Measure "is facially unconstitutional because it appropriates money without creating or providing for any new revenues in violation of Article III, Section 51 of the Missouri Constitution." Count II alleged that the Proposed Measure "fails to set forth the full and correct text of the measure in violation of § 116.050, RSMo; Article III, § 50; and Article XII, § 2(b)."

On May 28, 2020, Dr. Miller, the proponent of the Proposed Measure, filed an unopposed motion to intervene pursuant to Rule 52.12. On May 29, 2020, Laura Dominik, "a Missouri

---

[3] Johnson's petition in case number 20AC-CC00210 only alleged one count: that the Proposed Measure violated article III, section 51 of the Missouri Constitution. Cady's petition in 20AC-CC00209 alleged not only that the Proposed Measure violated article III, section 51, but that it also violated article III, section 50. We will refer to Cady's petition as the "Petition" because, under Rule 66.01, the circuit court's order of consolidation consolidated the two civil actions into one civil action.

resident and eligible voter [who] signed the Medicaid Expansion initiative petition that is the subject of this litigation," filed a motion to intervene pursuant to Rule 52.12(b). Both motions were granted by the circuit court on May 29, 2020. (Dr. Miller and Ms. Dominik will be referred to collectively as "Intervenors.")

On May 29, 2020, the Secretary of State filed his answer to the Petition and requested that judgment be entered in the State's favor. On the same day, Intervenor Dominik filed her answer to the Petition, and asserted as affirmative defenses that Count I failed to state a claim upon which relief can be granted and was not ripe for review because the Proposed Measure had not yet been adopted by vote of the citizenry, the election in question had not yet occurred, and it was not possible to determine whether any appropriation would be required until after the measure is adopted; and that Count II failed to state a claim upon which relief can be granted.

On May 31, 2020, Cady and Johnson filed a joint pre-trial brief, renewing their arguments that the Proposed Measure facially mandated spending without new revenues in violation of article III, section 51 and, alternatively, that the Proposed Measure violated the "full text" requirement of article III, section 50 because it did not expressly identify all provisions of the Missouri Constitution to be amended.

On June 1, 2020, the parties submitted a joint stipulation of facts and exhibits to the circuit court, and the circuit court heard arguments. The circuit court entered its judgment on June 2, 2020 ("Judgment"), based on the stipulated facts and exhibits, arguments presented, and applicable law. The Judgment found in favor of the Secretary of State and the Intervenors and against Cady and Johnson on all counts of the Petition. The Judgment concluded that Cady and Johnson's pre-election challenges under article III, section 51 were not ripe; the Proposed Measure did not on its face or by necessary implication require the appropriation of existing funds and did not

5

violate article III, section 51; and the Proposed Measure satisfied the requirements of article III, section 50 and section 116.050.2.

Cady filed an immediate appeal on June 2, 2020, and Johnson did so on June 3, 2020. This court ordered the cases consolidated. Our appellate proceedings were expedited to require submission of a record on appeal by June 3, 2020; the completion of briefing by June 6, 2020; and oral argument on June 8, 2020.

**Standard of Review**

Because the case was submitted on stipulated facts entered into between the parties in the proceedings before the circuit court, "[t]he only question before us is whether the trial court made the proper legal conclusion from the stipulated facts." *Mo. Elec. Coops. v. Kander*, 497 S.W.3d 905, 910 (Mo. App. W.D. 2016) (internal quotation marks omitted). Thus, our review is *de novo*. *Mo. Mun. League v. Carnahan*, 303 S.W.3d 573, 580 (Mo. App. W.D. 2010). "'This Court is primarily concerned with the correctness of the result, not the route taken by the trial court to reach it; the trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground.'" *Mo. Elec. Coops.*, 497 S.W.3d at 910 (quoting *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003)).

Our review of challenges to the initiative process is guided by certain fundamental principles:

> The people, from whom all constitutional authority is derived, have reserved the "power to propose and enact or reject laws and amendments to the Constitution." Mo. Const. art. III, [sec.] 49. When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course. Constitutional and statutory provisions relative to initiative are liberally construed to make effective the people's reservation of that power. . . .

6

The people, speaking with equal vigor through the same constitution, have placed limitations on the initiative power. That those limitations are mandatory is clear and explicit.

This constitution may be revised and amended *only* as therein provided.

*Comm. for a Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 507 (Mo. banc 2006) (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990)). "[T]his Court must attempt to harmonize all provisions of the initiative's proposal with the constitution . . . rather than creat[e] an irreconcilable conflict." *Id*. at 510 (citing *Consol. Sch. Dist. No. 1 of Jackson Cty. v. Jackson Cty*., 936 S.W.2d 102, 103-04 (Mo. banc 1996)).

## Analysis

Cady and Johnson assert three points on appeal, arguing that the circuit court erred: (1) in entering judgment against them by declaring that their pre-election challenge to the Proposed Measure, asserting that it violated article III, section 51 of the Missouri Constitution by appropriating money and failing to cover that appropriation with any new revenues, was not ripe for judicial determination; (2) in holding that the Proposed Measure did not facially violate article III, section 51 of the Missouri Constitution; and (3) in concluding that the Proposed Measure contained the "full text of the measure" in compliance with article III, section 50 of the Missouri Constitution. We agree with the circuit court that the substantive challenge to the Proposed Measure (Point I) is not ripe for judicial determination and that the two challenges to the form of the Proposed Measure (Points II and III) are without merit.

## Point I – Ripeness of Pre-election Challenge

In Point I, Cady and Johnson contend that the circuit court erred in entering judgment against them by declaring that their pre-election challenge to the Proposed Measure, asserting that it violated article III, section 51 of the Missouri Constitution by appropriating money and failing to cover that appropriation with any new revenues, was not ripe for judicial determination.

7

Pre-election review of the constitutionality of an initiative petition is limited. As explained in *Brown v. Carnahan*, 370 S.W.3d 637 (Mo. banc 2012):

> Nothing in our constitution so closely models participatory democracy in its pure form [as the citizen initiative petition process]. Through the initiative process, those who have no access to or influence with elected representatives may take their cause directly to the people. The people, from whom all constitutional authority is derived, have reserved the "power to propose and enact or reject laws and amendments to the Constitution."

*Id*. at 645 (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990) (quoting MO. CONST., art. III, § 49)). "To avoid encroachment on the people's constitutional authority, courts will not sit in judgment on the wisdom or folly of the initiative proposal presented, nor will this Court issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution." *Id*. "[W]hen courts are called upon to intervene in the initiative process, they must act with restraint, trepidation and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Id*. (internal quotation marks omitted).

"Even where a challenge purports to involve a constitutional provision pertaining to the required procedure or form of an initiative petition, the challenge will not be heard pre-election *unless*" two criteria are satisfied: "[A] pre-election challenge must . . . involve a 'threshold issue[ ] that affect[s] the integrity of the election itself, *and* [be] so clear as to constitute a matter of form.'" *Mo. Elec. Coops.*, 497 S.W.3d at 915 (quoting *Brown*, 370 S.W.3d at 645). "We may [only] look beyond the face of [an initiative] petition to the extent necessary *to determine whether constitutional and statutory requirements pertaining to the form of the petition* have been satisfied." *Id*. at 912-13 (internal quotation marks omitted). Such challenges pertain primarily to the *current* constitutional status of an initiative petition, as they address compliance with express conditions precedent to placing a proposal on the ballot. *Id*. at 915. "Pre-election judicial review

8

of a constitutional challenge pertaining to the required 'form' of an initiative petition is thus appropriate because ***regardless of the meritorious substance*** of a proposition, if the prerequisites of [the Missouri Constitution pertaining to the procedure and form of an initiative petition] are not met, the proposal is not to be on the ballot." *Id*. at 913 (internal quotation marks omitted).

In *City of Kansas City v. Kansas City Board of Election Commissioners*, 505 S.W.3d 795 (Mo. banc 2017), the Missouri Supreme Court explained that the Court has "adopted a bright-line test prohibiting pre[-]election challenges to what a ballot proposal would do, if approved by the voters. Instead, after *Boeving*, pre[-]election challenges are limited to claims that the procedures for submitting a proposal to the voters were not followed." *Id*. at 798 (citing *Boeving v. Kander*, 496 S.W.3d 498, 511 (Mo. banc 2016)). "[T]he salient point in this pre-election contest is that there is nothing on the face of [the Proposed Measure] that clearly and unavoidably purports to appropriate previously existing funds . . . ." *Boeving*, 496 S.W.3d at 510-11. There are no words on the face of the Proposed Measure that appropriate existing funds, and the circuit court properly rejected Cady's and Johnson's invitation to "delve into the hypothetical interaction between the [Proposed Measure] (if passed), Missouri appropriations law, and substantive Medicaid law" and adjudicate their article III, section 51 challenges on the merits. The circuit court correctly concluded that *Boeving* and *Kansas City Board of Election Commissioners* make clear that such review is appropriate only *after* the election, should the Proposed Measure pass.

Point I is denied.

### Point II – Article III, Section 51 Challenge

In Point II, Cady and Johnson contend that the circuit court erred in holding that the Proposed Measure did not facially violate the prohibition against appropriation by initiative found in article III, section 51 of the Missouri Constitution:

**III Section 51.  Appropriations by initiative—effective date of initiated laws— conflicting laws concurrently adopted.—The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby**, or for any other purpose prohibited by this constitution.  Except as provided in this constitution, any measure proposed shall take effect when approved by a majority of the votes cast thereon.  When conflicting measures are approved at the same election the one receiving the largest affirmative vote shall prevail.

(Emphasis added to text.)  Cady and Johnson argue that the Proposed Measure forces the state to spend money and forces the General Assembly to annually appropriate the state funds required under federal Medicaid statutes and regulations without creating or providing any new revenue source; and therefore, those funds are unconstitutionally appropriated by the measure itself.

One challenge eligible for pre-election judicial review is a constitutional challenge pertaining to the provision in article III, section 51 of the Missouri Constitution prohibiting initiative petitions from being used for the "appropriation of money other than of new revenues created and provided for thereby." *Mo. Elec. Coops.*, 497 S.W.3d at 914.  "[A] challenge alleging a violation of this provision of the Missouri Constitution involves the constitutionally required procedure or form on an initiative petition and can be readily gauged, often from the language of the initiative itself, as to be an obvious matter of form." *Id*.

In *City of Kansas City v. Chastain*, 420 S.W.3d 550 (Mo. banc 2014), our Supreme Court held that the trial court had been authorized "to conduct pre-election review of the facial constitutionality of an initiative petition" because the issue was whether the proposed ordinance was plainly "an unconstitutional appropriation ordinance under [a]rticle III, section 51 of the Missouri Constitution." *Id*. at 554-55 (citing *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828).  The Supreme Court is consistent in limiting pre-election judicial review of challenges to initiative petitions to whether there are obvious violations of express constitutional or statutory "conditions precedent to placing a proposal on the ballot." *Missourians to Protect the Initiative Process*, 799 S.W.2d at 828.

As in this case, the opponents in *Boeving* argued that the amendment violated the provision in article III, section 51. 496 S.W.3d at 509. The *Boeving* court found:

> Such an argument goes to what Amendment No. 3 will or may do if approved by the voters and put into operation, not to whether Amendment No. 3 is properly put before the voters at all. As discussed below, such challenges to the effect of a proposed amendment if enacted rather than to the sufficiency of the initiative petition process are premature, burdensome to those who seek to avail themselves of the power of initiative process reserved to the people in article III, section 49, and better addressed in the context of actual (rather than hypothetical) application.

496 S.W.3d at 509-10. Even though the Court has entertained "appropriation by initiative" claims in pre-election litigation,[4] it is bound to adopt an "'interpretation [that] harmonizes the provisions of . . . the initiative and article III, section 51 of the state constitution rather than creating an irreconcilable conflict.'" *Id.* at 510 (quoting *Comm. for a Healthy Future, Inc.*, 201 S.W.3d at 510 (rejecting claim)).

According to the official ballot title, state government entities are estimated to have one-time costs of approximately $6.4 million and an unknown annual net fiscal impact by 2026 ranging from increased costs of at least $200 million to savings of $1 billion. In addition, local governments expect costs to decrease by an unknown amount. "[T]he salient point in this pre-election contest is that there is nothing on the face of the [Proposed Measure] that clearly and unavoidably purports to appropriate previously existing funds . . . ." *Boeving*, 496 S.W.3d at

---

[4] In *Boeving v. Kander*, 496 S.W.3d 498, 510 n.6 (Mo. banc 2016), the Court explained:

Successful challenges have been limited almost exclusively to initiative petitions proposing local ordinances where the evident purpose and effect of the proposal was to impose a new obligation leaving no discretion as to whether the local governments would or could pay this new obligation and no new source of revenue sufficient to do so. *See, e.g., Kansas City v. McGee*, 364 Mo. 896, 269 S.W.2d 662, 665 (1954) ("proposed ordinance is, in effect, an appropriation ordinance but does not create nor provide for any revenues"); *State ex rel. Card v. Kaufman*, 517 S.W.2d 78, 80 (Mo. 1974) ("By its plain intendment it requires the budget official to include the specified compensation in the budget, and requires the city council to approve it, regardless of any other financial considerations . . . . There is no pretense that it creates or provides new revenues with which to fund the additional cost to the city."). As a result, these cases met the "irreconcilable conflict" standard for pre-election review later articulated by this Court in *Committee for a Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 510 (Mo. banc 2006).

11

510-11. As the circuit court observed, the Proposed Measure does not use the phrase "stand appropriated" or any similar phrase that indicates an appropriation of existing funds or directs the legislature to appropriate such funds. The forecasts as to costs of the Proposed Measure go to what the Proposed Measure will or may do if approved by the voters and put into operation, not to whether the Proposed Measure is properly put before the voters. Funding for the Missouri Medicaid program, MO HealthNet, is appropriated annually by the General Assembly. The Proposed Measure does not direct or restrict the General Assembly's ability to change the amount of appropriations for the MO HealthNet program or to increase or decrease funding for the program based on health-care-related costs. This interpretation harmonizes the provisions of the Proposed Measure and article III, section 51 of the state Constitution rather than creating an "irreconcilable conflict." *Comm. for a Healthy Future, Inc.*, 201 S.W.3d at 510.

Point II is denied.

### Point III – Article III, Section 50 Challenge

In Point III, Cady and Johnson contend that the circuit court erred in concluding that the Proposed Measure contained the "full text of the measure" in compliance with article III, section 50 of the Missouri Constitution:

> **III Section 50. Initiative petitions—signatures required—form and procedure.**—Initiative petitions proposing amendments to the constitution shall be signed by eight percent of the legal voters in each of two-thirds of the congressional districts in the state, and petitions proposing laws shall be signed by five percent of such voters. **Every such petition** shall be filed with the secretary of state not less than six months before the election and **shall contain** an enacting clause and **the full text of the measure.** Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith, and the enacting clause thereof shall be "Be it resolved by the people of the state of Missouri that the Constitution be amended:". Petitions for laws shall contain not more than one subject which shall be expressed clearly in the title, and the enacting clause thereof shall be "Be it enacted by the people of the state of Missouri:".

12

(Emphasis added to text.) Cady and Johnson argue that the initiative petition fails to include the full text of the measure in that it fails to list existing constitutional provisions in direct conflict with the Proposed Measure, including article III, section 36 (payment of state revenues and receipts to treasury—limitation of withdrawals to appropriations—order of appropriations) and article IV, sections 24 (governor's budget and recommendations as to revenue—proposed legislation not enacted not to be included in projection of new revenues), 25 (limitation of governor's budget on power of appropriations), 26 (governor's power of partial veto of appropriation bills—procedure—limitations), and 27 (power of governor to control rate of and reduce expenditures—notification to general assembly, when).

Another challenge eligible for pre-election judicial review is where an initiative petition, as in this case, "is claimed to violate article III, section 50 of the Missouri Constitution because it . . . amends more than one constitutional provision." *Mo. Elec. Coops.*, 497 S.W.3d at 914. *See also Moore v. Brown*, 165 S.W.2d 657, 659-60 (Mo. banc 1942) (entertaining pre-election challenge to constitutionality of initiative petition involving claim that measure contained more than one subject and amended constitutional provisions beyond those it purported to amend). "Such challenges address a constitutional provision pertaining to the required procedure and form of an initiative petition, and by their nature allege a violation that can be readily gauged, rendering it so obvious as to be a matter of form." *Mo. Elec. Coops.*, 497 S.W.3d at 914.

As in this case, in *Boeving*, opponents to a constitutional amendment raised an article III, section 50 challenge and argued that the amendment "amends by implication" other provisions of the constitution. 496 S.W.3d at 508. The court explained:

> This Court has been unwilling in the past to construe the constitutional provisions reserving to the people the power to propose constitutional amendments to impose any requirement that a measure's proponents identify every provision of the existing constitution that the proposed amendment might conceivably alter or affect if and when the proposed amendment is approved by the voters and put into

13

operation. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. banc 1981) ("*Moore* does not require the makers of an initiative petition to 'ferret out' and to list all the provisions which could possibly or by implication be modified by the proposed amendment.") (citing *Moore v. Brown*, 350 Mo. 256, 165 S.W.2d 657, 663 (1942)). Nor is this Court willing to construe article III, section 50, to prohibit voters from approving or rejecting a constitutional amendment proposed by initiative petition simply because the proposed amendment may (if and when it goes into operation) be construed to alter or affect the application of a preexisting constitutional provision. By its terms, article III, section 50 is concerned only with what a proposed constitutional amendment "contains," not with what a proposed constitutional amendment will or might do if the voters approve it.

*Id*. at 509.

In *Ritter v. Ashcroft*, 561 S.W.3d 74, 95 (Mo. App. W.D. 2018), appellants argued that the circuit court erred in rejecting their argument that the initiative petition was defective because it failed to identify existing constitutional provisions with which the initiative petition was in "direct conflict." The opponents relied on the relevant text of article III, section 50, which provides that "[e]very [initiative] petition . . . shall contain . . . the full text of the measure." They also relied on section 116.050.2(2), which provides in relevant part that "[t]he full and correct text of all initiative and referendum petition measures shall . . . [i]nclude all sections of existing law or of the constitution which would be repealed by the measure." The court explained:

In order for provisions proposed in an initiative petition to be in "direct conflict" with existing law, it is not enough that the provisions of existing law "will be changed or affected by the amendment." *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 15 (Mo. banc 1981). Instead, the provisions of the petition must be "in direct conflict with or . . . irreconcilably repugnant" to existing law. *Id*.

*Ritter*, 561 S.W.3d at 95. The court found that section 116.050 "does not require initiative proponents to include all those provisions 'affected,' 'impacted,' or 'modified' by a proposed measure. Moreover, requiring proponents to 'ferret out' all such potential conflicts in the abstract would tend to stifle the initiative process." *Id*. (quoting *Knight v. Carnahan*, 282 S.W.3d 9, 19 (Mo. App. W.D. 2009)).

14

Like the *Boeving* court, we are not "willing to construe article III, section 50, to prohibit voters from approving or rejecting a constitutional amendment proposed by initiative petition simply because the proposed amendment may (if and when it goes into operation) be construed to alter or affect the application of a preexisting constitutional provision." 496 S.W.3d at 509. The circuit court did not err in observing that Cady's claim that the Proposed Measure amends article III, section 36 and article IV, sections 24-28 "requires an overly broad reading on the [Proposed Measure] to get to that result." The circuit court properly concluded that the Proposed Measure neither purported to appropriate existing funds nor implicated the Governor's role in the appropriation process. The circuit court also properly treated the Proposed Measure as an amendment to MO HealthNet's eligibility criteria, subject to the legislature's appropriation power.

Point III is denied.

**Conclusion**

The circuit court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Presiding Judge

Anthony Rex Gabbert and W. Douglas Thomson, Judges, concur.